UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

ADDISON CENTRAL SCHOOL
DISTRICT, *et al.*

        Plaintiff,

v.

MONSANTO CO., SOLUTIA, INC., and
PHARMACIA LLC

        Defendants.

No. 2:23-CV-00164-CR

## MOTION TO DISMISS

This is a lawsuit for alleged property damage brought by the owners/operators of schools arising from their use of polychlorinated biphenyl ("PCB") containing products in the construction of their school buildings over 40 years ago.

Monsanto Company, Solutia Inc., and Pharmacia LLC (collectively, "Pharmacia") move to dismiss those Plaintiffs who fail to plead an injury in fact necessary to establish standing. In the Complaint, Plaintiffs expressly tie their alleged injury to the existence of air sampling exceedances of the School Action Levels ("SALs") for PCBs promulgated by the Vermont Department of Health, which requires schools to identify and abate potential sources of PCBs.[1]

Yet, **only fourteen Plaintiffs have tested and demonstrated exceedances of the SALs in at**

---

[1]    Pharmacia does not agree or concede that exceedances of the SALs set by the Vermont Department of Health constitute a compensable injury in a civil action. The SALs represent a regulatory level, not the standard for property damage, injury, or harm in a civil action. *See, e.g.*, PCBs in Schools, Department of Environmental Conservation, *available at* https://bit.ly/45he4uv (last visited Aug. 23, 2023) ("Results at or above the school action level (SAL) *may* indicate that PCB sources are likely present." (emphasis added)); *see also* Exposure Levels for Evaluating Polychlorinated Biphenyls (PCBs) in Indoor School Air, United States Environmental Protection Agency, *available at* https://bit.ly/3XuAc1p (last visited Aug. 22, 2023) ("The[] [levels] were derived to serve as health protective values intended for evaluation purposes. They should not be interpreted as 'bright line' or 'not-to-exceed' criteria . . .."). Regardless of the legal viability of Plaintiffs' property damage theory, Plaintiffs failed to plead even their own definition of "injury" tied to SAL exceedances.

**least one sample in a school district building**. The remaining seventy-nine Plaintiffs have either: (1) fully tested all buildings and have no demonstrated exceedances of SALs; (2) tested certain school district buildings that have no demonstrated exceedances of SALs and have not yet tested the remaining buildings; or (3) not tested any school district buildings. (*See* Vermont School Testing Summary, attached as **Exhibit 1**.)   All Plaintiffs that fall within these categories have no injury in fact and, therefore, lack standing and must be dismissed.

For the Plaintiffs that do claim property damage related to exceedances of Vermont's SALs, Plaintiffs fail to state a claim upon which relief may be granted for:

(1) private nuisance (Count II) because (a) Plaintiffs fail to allege that the nuisance arose from land owned or maintained by Pharmacia; and (b) the allegations relate only to a single parcel of property, when two adjoining parcels are required to state a claim;

(2) public nuisance (Count I) because Plaintiffs (a) allege individual product liability claims for property damage, not the interference with a right common to the general public; and (b) fail to allege that Pharmacia owned or had any right to control their PCBs after the point of sale;

(3) trespass (Count V) because Plaintiffs fail to allege (a) an unauthorized intrusion; (b) an entry onto land of another; and (c) intrusion by tangible matter.

## FACTUAL BACKGROUND[2]

### I.     Old Monsanto's Sale of PCBs

Plaintiffs allege that an entity now commonly referred to as "Old Monsanto" manufactured PCBs which were incorporated into a wide range of building products, including plasticizers, sealants, adhesives and caulks. (Doc. No. 23, Compl. at ¶¶ 1, 3, 9, 38.)  PCBs were used in commercial applications due to their chemical stability, fire resistance, and electrical resistance properties. (*See id.* ¶ 39.) Around 1971, Old Monsanto ended the sale of PCBs for use in plasticizers and other "open" PCB applications. (*Id.* ¶ 102.) In 1977, Old Monsanto ceased manufacture of all PCBs. (*See id.* ¶¶ 1, 35.)

### II.    Plaintiffs' Claims

Plaintiffs, who bring this lawsuit as owners and operators of their schools (*id.* ¶¶ 1, 2), allegedly used PCB-containing building materials in the construction of certain school buildings. (*Id.* ¶ 4.) Plaintiffs claim that the PCBs escaped from these building products and were emitted into air and deposited onto school surfaces. (*Id.* ¶ 8.)  Plaintiffs seek recovery for alleged PCB-related property damage to their school facilities.  (*Id.* ¶ 146.)

### III.   Act 74

In 2021, the Vermont Legislature passed Act 74, which requires schools built before 1980 to test their indoor air for PCBs.  *See* 2021, No. 74, § B.1106(3); § E.709.1(a).  Section E.709.1 of Act 74 appropriates up to $4.5 million to "complete air indoor quality testing" for PCBs in public

---

[2]     Unless otherwise noted, the "Facts" are taken from the Complaint. For purposes of this Fed. R. Civ. P. 12(b)(6) motion only, Pharmacia takes as true the allegations set forth in the Complaint. Further, this Court may take judicial notice of publicly available documents without converting the motion to dismiss to a motion for summary judgment. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (It is "well established that a district court may rely on matters of public record in deciding a motion to dismiss under rule 12(b)(6)[.]"); *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (in ruling on a motion to dismiss, a district court may properly consider matters of which judicial notice may be taken). This Court also may consider documents incorporated by reference in the complaint and documents that the complaint "relies heavily upon … rendering the document[s] 'integral' to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

schools and approved and recognized independent schools.  *Id*.  Section B.1106(3) appropriates $500,000 from the general funds to the Vermont Department of Health ("DOH") to support the testing.  *Id*.  Act 78 amended Act 74 to require schools to complete testing by July 1, 2027.  *See* 2023, No. 78, § E.709.1(a).  The Vermont Department of Environmental Conservation ("DEC") has hired consultants to conduct the testing.[3]  Testing began in the spring of 2022, and the DEC has published a testing schedule through July 31, 2025.[4]  Follow-up testing is only required if any sampling result is at or above the SAL.[5]  According to the testing schedule, fifty Plaintiffs have not tested any school district buildings or do not have published exceedances of SALs, and an additional eight Plaintiffs are not scheduled to test any of their buildings.  (*See* **Exhibit 1**.)

## IV.    School Action Levels

As per the Complaint, the DOH has promulgated school-specific action levels "[t]o indicate when schools need to identify and abate potential sources of PCBs inside their buildings[.]" (Doc. No. 23, Compl. at ¶ 11.)  The SALs are organized by student age group: (1) 30 ng/m3 (nanograms per cubic meter) for pre-kindergarten; (2) 60 ng/m3 for kindergarten through 6th grade; (3) 100 ng/m3 for 7th grade through adult.  The results of the testing are publicly available.[6]  Schools that do not have results at or above the SALs in any sample are not required to conduct further tests or take remedial actions.  *See supra*, n. 5; *see also infra*, n. 8.

---

[3]        *See* "Who is Responsible for Testing the Indoor Air of Schools?", PCBs Frequently Asked Questions, Department of Environmental Conservation, *available at* https://bit.ly/47A8t3U (last visited Aug. 21, 2023).

[4]        *See* Testing Schedule, Department of Environmental Conservation, *available at* https://bit.ly/3YKgUpp (last visited Aug. 21, 2023).

[5]        *See supra*, n. 3, "Is Any Follow-Up or Additional Testing Required?"

[6]        *See* Test Results published by Vermont Department of Environmental Conservation, *available at* https://bit.ly/3QOiYe3 (last visited August 21, 2023).

The DEC denotes which schools have an exceedance of the relevant PCB SALs by marking those results in red.[7] Based on those results, ten Plaintiffs have had all of their required school buildings tested and shown no exceedances of applicable SALs.  (*See* **Exhibit 1**.). Eleven Plaintiffs have had certain of their school buildings tested and shown no exceedances of the applicable SALs.  (*Id.*) Only fourteen Plaintiffs have had at least one sample in one school building test over the applicable SALs.  (*Id.*)

In sum, Plaintiffs fall into five categories:

(1) Fifty Plaintiffs have not tested any school buildings required to be tested or do not have published exceedances of SALs;

(2) Eight Plaintiffs are not scheduled to test any of their school buildings;

(3) Ten Plaintiffs have fully tested all school buildings required to be tested and have zero SALs exceedances;

(4) Eleven Plaintiffs have tested certain school buildings and have zero SALs exceedances and have not tested the remaining buildings or do not have published exceedances of SALs; and

(5) Fourteen Plaintiffs have had at least one sample in a school building in their district test over SALs.

## APPLICABLE LEGAL STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . ." *Vermont Alliance for Ethical Healthcare, Inc. v. Hoser*, 274 F. Supp. 3d 227, 232 (D. Vt. 2017) (citations omitted).  To survive a Rule 12(b)(1) motion to dismiss, a plaintiff "must allege

---

[7]     *See*, *e.g.*, Test Results for Oak Grove School, *available at* https://bit.ly/3sj2e4z (last visited Aug. 21, 2023).

facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain factual allegations "plausibly suggesting" a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)).

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 366 (D. Vt. 2021) (quotation omitted). This Court's role as a federal court sitting in diversity is to "carefully predict how the state's highest court would resolve the uncertainties [it] ha[s] identified." *Runner v. New York Stock Exchange, Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (citation omitted). In making this prediction, this Court must "give the fullest weight to pronouncements of the state's highest court, here the Vermont Supreme Court, while giving proper regard to relevant rulings of the state's lower courts." *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005). "[I]t is not [the court's] role to create or modify state law, rather only to predict it." *Echverry v. Jazz Casino Company, LLC*, 988 F.3d 221, 228 (5th Cir. 2021) (citation omitted); *Ackoff-Ortega v. Windswept Pacific Entertainment Co. (Inc.)*, 130 F. Supp. 2d 440, 446 (S.D.N.Y. 2000) ("[F]ederal courts do not create state law.").

<u>ARGUMENT</u>

I.      **SEVENTY-NINE PLAINTIFFS LACK STANDING**

Ninety-two school districts and one independent school bring this action for individual property damage.  Each Plaintiff must establish its claims – including standing to bring its claims – in its own right.  Seventy-nine Plaintiffs are unable to meet the requirements of Article III standing.

"For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022).  An injury in fact is "'an actual or imminent' and 'concrete and particularized' harm to a 'legally protected interest[.]'" *Natural Resources Defense Council v. National Highway Traffic Safety Administration*, 894 F.3d 95, 103 (2d Cir. 2018).  "'[A]llegations of *possible* future injury are not sufficient" for standing.  *Soule by Stanescu v. Conn. Ass'n of Schools, Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 (2013)).

Plaintiffs expressly tie their alleged injury to results of testing that reveal exceedances of the SALs in their buildings and campus facilities.  (*See* Doc. No. 23, Compl. at ¶¶ 2, 11–17, 123.)  Plaintiffs allege that the DOH promulgated SALs "based on public health studies, PCB toxicity values established by the EPA, and EPA's and Vermont's research regarding PCB exposure levels, frequency, duration, and sources." (*Id.* ¶ 122.) Further, Plaintiffs assert that SALs are intended "[t]o indicate when schools need to identify and abate potential sources of PCBs inside their buildings[.]" (*Id.* ¶ 11.)  In other words, when testing reveals PCB levels below the SALs, Vermont schools do not "need to identify and abate potential sources of PCBs inside their buildings." (*See*

*id.*)  Template letters prepared by the DEC to the parents, caregivers, and staff concerning results that are below the SALs make clear that "we don't need to do anything further."[8]

Despite tying their stated injury to exceedances of SALs, the majority of Plaintiffs do not have exceedances of the SALs in any sample collected from any of their buildings. According to the publicly available results of the school testing, only fourteen Plaintiffs had at least one sample in one of their buildings show an exceedance of SALs.  (*See* **Exhibit 1**.)   In fact, ten Plaintiffs have tested all buildings they were required to test and identified zero exceedances of SALs in any of their school buildings. (*Id.*) Because those ten Plaintiffs have no need to identify and abate potential sources of PCBs under the applicable statute and regulations, those Plaintiffs have no injury in fact and do not have standing.   Consequently, the following Plaintiffs should be dismissed:

1. Alburgh School District
2. Blue Mountain Union School District
3. Fairfax School District
4. Fletcher School District
5. Ludlow Mount Holly Unified Union School District
6. Newport City School District
7. Newport Town School District
8. Vernon School District
9. Windham Northeast Union Elementary School District
10. Winooski School District

Eleven Plaintiffs have tested certain buildings they are required to test; but of those buildings tested, there have been zero exceedances of the SALs.  (*Id.*)  Other buildings within these Plaintiffs' districts have not even been tested or do not have published exceedances of SALs.  (*Id.*) These eleven Plaintiffs have not demonstrated exceedances of PCB SALs in any building, and

---

[8]     *See* The DEC Template Letter for results under SAL for Schools to Parents, Caregivers, and Staff, *available at* https://bit.ly/45DQmZ3 (last visited Aug. 21, 2023).

therefore, fail to allege an injury in fact necessary for standing. Consequently, the following Plaintiffs should be dismissed:

1. Addison Central School District
2. Addison Northwest School District
3. Enosburgh-Richford Unified Union School District
4. Lake Region Union Elementary-Middle School District
5. Montpelier Roxbury School District
6. Orange Southwest Unified Union School District
7. Oxbow Unified Union School District
8. South Burlington School District
9. Springfield School District
10. West River Modified Union Education District
11. White River Unified School District

Lastly, fifty Plaintiffs have not tested any buildings they are required to test or do not have published exceedances of SALs, and an additional eight Plaintiffs are not scheduled to test any of their buildings according to the DEC's testing schedule. (*Id.*) Because these Plaintiffs do not have exceedances of PCB SALs, they have no injury in fact. Consequently, the following Plaintiffs should be dismissed:

1. Barre Unified Union School District
2. Barstow Unified Union District
3. Burr and Burton Academy
4. Cambridge School District
5. Champlain Islands Unified Union School District
6. Charleston School District
7. Colchester School District
8. Craftsbury School District
9. Derby School District
10. Echo Valley Community School District
11. Essex Westford Educational Community Unified Union School District
12. First Branch Unified School District
13. Georgia School District
14. Halifax School District
15. Hartford School District
16. Harwood Unified Union School District
17. Hartland School District
18. Hazen Union School District
19. Holland School District
20. Lake Region Union High School District

21. Lamoille North Supervisory Union & School District
22. Lamoille South Unified Union School District
23. Maple Run Unified School District
24. Mill River Unified Union School District
25. Milton Town School District
26. Missisquoi School District
27. Mount Abraham Unified School District
28. Mount Ascutney School District
29. Mount Mansfield Unified Union School District
30. North Country Union Junior High School Board
31. Orleans Southwest Union Elementary School District
32. Otter Valley Unified Union School District
33. Paine Mountain School District
34. Readsboro School District
35. River Valleys Unified School District
36. Rochester-Stockbridge Unified District
37. Rockingham School District
38. Rutland Town School District
39. Slate Valley Unified School District
40. South Hero School District
41. St. Johnsbury School District
42. Stamford School District
43. Stafford School District
44. Thetford Town School District
45. Troy School District
46. Waits River Valley Union School District
47. Weathersfield School District
48. Wells Spring Unified Union School District
49. Windham School District
50. Windsor Central Unified Union School District
51. **Coventry School District**
52. **Jay-Westfield Joint Elementary School District**
53. **Lowell School District**
54. **Norwich-Hannover Interstate School District**
55. **Pittsfield School District**
56. **Sharon School District**
57. **Westminster School District**
58. **Wolcott School District[9]**

The Plaintiffs identified in the foregoing paragraphs in which testing has not been completed or is not scheduled to be completed lack standing because they have failed to show an

---

[9] The bolded Plaintiffs represent the districts with all schools that are not scheduled for testing by the DEC. (*See* **Exhibit 1**.)

"actual or imminent" injury.  Allegations of speculative harms are insufficient to confer Article III

standing. *Forziano v. Independent Group Home Living Program, Inc.*, 613 Fed. Appx. 15, 17

("[S]peculative harm is insufficient to confer standing on the plaintiffs.").

Accordingly, seventy-nine Plaintiffs lack standing and should be dismissed.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIVATE NUISANCE

### A.  Plaintiffs fail to allege that the nuisance arose from land owned or maintained by Pharmacia.

In addition to the Plaintiffs identified above that lack standing, all of the Plaintiffs have

failed to state a claim for private nuisance because they do not allege the nuisance arose from

Pharmacia's use of neighboring land and, instead, impermissibly seek to create private nuisance

liability solely related to the historical manufacture and sale of a lawful product.

"[T]he Restatement provisions appear to stand for the principle that liability for private

nuisance is based in the use of land, whether as a landowner or an occupier of land."  *See State v.*

*Atlantic Richfield Co.*, 2018 WL 11358617, at *9 (Vt. Super. July 31, 2018).  Indeed, "Vermont

courts have [] highlighted the importance of the defendant's use of their land when determining if

a use is substantial or unreasonable." *Id.* at *8 (citing *Trickett v. Ochs*, No. 467-11-00 Ancv, 2005

WL 5872192, at *5 (Vt. Super. Ct. Sept. 2, 2005)).  Consequently, in *Atlantic Richfield Co.*, the

court dismissed the plaintiff's nuisance claim when plaintiff did "not allege[] that Defendants'

property use" caused the nuisance. *Id.* at *9.

Here, Plaintiffs fail to allege any nuisance arising from Pharmacia's use of land.  Instead,

Plaintiffs base their allegations upon Old Monsanto's historical manufacture of PCBs and

introducing PCBs into the stream of commerce.  (Doc. No. 23, Compl. at ¶¶ 149–150.)  As other

courts have found, private nuisance allegations cannot rest solely upon the manufacture of a

product. *Atlantic Richfield Co.*, 2018 WL 11358617, at *9; *see also Town of Hooksett Sch. Dist.*

*v. W.R. Grace & Co.*, 617 F. Supp. 126, 133 (D.N.H. Nov. 30, 1984) (dismissing nuisance claim under New Hampshire law where "[p]laintiff seeks to recover from Defendant not in its capacity as a property owner, but in its capacity as a manufacturer").

**B.  Private nuisance claims are limited to neighboring, competing land uses.**

Relatedly, Vermont law requires the use of two separate adjacent parcels of land in order to state a claim for private nuisance.  *See Windsor School Dist. v. State*, No. 536-10-96WNCV, 2002 WL 34454092, at *27 (Vt. Super. Feb. 15, 2002) ("Nuisance claims resolve conflicts between neighboring, contemporaneous landowners . . . ."); *see also Gardner v. Simpson Fin. Ltd. P'ship*, CIV.A. 09-11806-FDS, 2012 WL 1109104, at *8–9 (D. Mass. Mar. 30, 2012), *appeal dismissed* (May 15, 2014) (dismissing private nuisance claim under Massachusetts law where plaintiffs failed to allege that defendant permitted an unreasonable activity on separate parcel); *Am. Glue & Resin, Inc. v. Air Products & Chemicals*, *Inc.*, 835 F. Supp. 36, 48–49 (D. Mass. Oct. 14, 1993) (dismissing nuisance claim under Massachusetts law where nuisance condition was located on plaintiff's own property). In *Windsor*, the Vermont Superior Court ruled that a plaintiff could not bring a nuisance claim against the prior owner landowner because the defendant must be a "contemporaneous, neighboring landowner."  2002 WL 34454092, at *27.  Pursuant to *Windsor*, the private nuisance condition cannot originate on the plaintiff's own land.  Here, the only parcels of land at issue are Plaintiffs' properties. As previously explained, Plaintiffs do not allege any nuisance arising from Pharmacia's use of land, much less that Pharmacia was a contemporaneous, neighboring landowner.

Plaintiffs will likely claim that a similar argument was raised and rejected in the matter of *Burlington School District v. Monsanto Co., Solutia, Inc., and Pharmacia LLC*, 2:22-cv-215, 2023 WL 4175344, at *1 (D. Vt. June 26, 2023) ("BSD"), and that this Court need not revisit the issue.

Pharmacia disagrees.  While there may be an initial appeal to simply embrace a decision on a similar issue in a contemporaneous District of Vermont matter pending before a different judge, Defendants respectfully submit that the BSD court's reasoning, which is not binding here, is problematic and merits independent consideration by this Court.  As an initial matter, the BSD court did not address *Windsor* in its decision at all – a significant omission – instead stating, "The Restatement (Second) of Torts does not specify whether a private nuisance must originate on neighboring land." 2023 WL 4175344, at *4 (citing Restatement (Second) of Torts § 821D).[10] Even setting aside the BSD court's decision not to consider *Windsor*, notwithstanding its reliance on the Restatement the court declined to address Section 826 and Section 828 of the Restatement (Second) of Torts, which require courts to evaluate competing, contemporaneous land uses to determine whether a private nuisance exists.  Further, Section 834 of the Restatement (Second) of Torts provides, "One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Comment b to Section 834 further defines "activity" to fall into two general classes of activity, which are activities "that cause harm only so long as the activity continues—such as directly sending noise, smoke, heat or gases over ***neighboring land***—and those that create physical conditions that are ***harmful to neighboring land*** after the activity that created them has ceased[.]" *Id.* (emphasis added). Thus, the decision in BSD failed to adhere to both Vermont law and the Restatement, which limit private nuisance to contemporaneous, neighboring land users. Accordingly, the claim for private nuisance should be dismissed.

---

[10]      In a separate action, Judge Sessions denied Pharmacia's motion to dismiss regarding similar claims brought by Burlington School District. As noted above, this Court is not bound by Judge Session's decision. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quotation omitted).

### III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR PUBLIC NUISANCE

**A. Plaintiffs fail to allege interference with a right common to the general public.**

Plaintiffs failed to state a claim for public nuisance because they do not allege Pharmacia interfered with a right common to the general public, but, instead, each Plaintiff is suing in its own name as a property owner for property damage.

To state a claim for public nuisance, Plaintiffs must allege that Pharmacia "unreasonabl[y] interfere[ed] with a right common to the general public." *State v. Howe Cleaners, Inc*., No. 27-1-04WNCV, 2007 WL 3237103 (Vt. Super., Apr. 2007) (citation omitted). "[T]o be considered a public nuisance, an activity must disrupt the comfort and convenience of the general public by affecting some general interest." *Napro Dev. Corp. v. Town of Berlin,* 135 Vt. 353, 357 (1977). "A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." Restatement (Second) of Torts § 821B, cmt. g.

Vermont courts distinguish between a municipality's governmental function and proprietary function. *Lorman v. City of Rutland*, 207 Vt. 598, 604–05 (2018). While "municipalities perform governmental responsibilities for the general public as instrumentalities of the state; they conduct proprietary activities only for the benefit of the municipality and its residents." *Id.* at 605 (citation omitted).  The public school Plaintiffs, like the sole independent school Plaintiff, Burr and Barton Academy, own property in a proprietary capacity. *Hunters, Anglers and Trappers Ass'n of Vermont, Inc. v. Winooski Valley Park Dist.*, 181 Vt. 12, 16–17 (2006).  Plaintiffs allege property damage related to the presence of PCBs in their school facilities. (*See*, *e.g.*, Doc. No. 23, Compl. at ¶ 135.)  Indeed, Plaintiffs contend the presence of PCBs is "injurious to the Districts as owner of said property."  (*Id*. at ¶ 190.)

Plaintiffs' public nuisance cause of action is at its core a product liability action because it is an action for damages for injuries caused to Plaintiffs' property by a product. *See*, *e.g.*, *County of Santa Clara v. Atl. Richfield Co.*, 40 Cal. Rptr. 3d 313, 328–29 (Ct. App. 2006) (action for removal of lead paint from county-owned buildings "should not be extended beyond products liability law to public nuisance law[.]"); *City of San Diego v. U.S. Gypsum Co.*, 35 Cal. Rptr. 2d 876, 883 (Cal. App. 2 Dist.,1994) (affirming judgment as a matter of law for manufacturer on public nuisance claim based upon asbestos-containing materials in city-owned buildings); *see also State v. Lead Industries, Ass'n, Inc.*, 951 A.2d 428, 456 (R.I., 2008) (dismissing nuisance action against lead paint manufacturers that sounded in products liability).[11]  The public nuisance claim therefore should be dismissed with prejudice.

### B. Plaintiffs fail to allege Pharmacia owned or had any right to control any of the building products which purportedly caused the property damage.

Plaintiffs also failed to state a public nuisance claim under Vermont law for Pharmacia's manufacture and sale of PCBs in bulk to its customers who incorporated them into building products.  Because Pharmacia's alleged conduct was limited to manufacturing and selling PCBs to its customers over forty years ago, Pharmacia was not in control of the PCBs after the point of sale, when third parties incorporated the PCBs into building products, at the time Plaintiffs used the products in the construction of their school buildings, or when they allegedly migrated from the building materials.  Absent control of the products that Plaintiffs purchased and incorporated into the construction of their schools, Pharmacia cannot be held liable for public nuisance.

---

[11]     While Pharmacia disagrees with California's expansion of public nuisance law, even under California law, the courts recognize that a public entity suing on its own behalf for damage to its property sounds exclusively in product liability.  Here in Vermont, the BSD court overlooked the fact that BSD's public nuisance claim is simply a product liability claim in disguise.

In *Atlantic Richfield Co.*, the Vermont Superior Court found a defendant manufacturer may not be held liable in nuisance for merely placing a product into the stream of commerce. *Atlantic Richfield Co.*, 2018 WL 11358617, at *9–10 (Vt. Super. July 31, 2018). There, the State of Vermont alleged that the defendant manufacturers were liable for a "generalized injury to the State waters [] caused by methyl tertiary butyl ether ("MTBE") contamination." *Id*. at *1. In line with similar actions, the court rejected the State's attempt to expand common law public nuisance. The court stated that "the use of common law nuisance as a framework for seeking a remedy for contamination from manufactured products is tantamount to nuisance law 'becom[ing] a monster that would devour in one gulp the entire law of tort.'" *Id*. (quoting *Tioga Pub. Sch. Dist. No. 15 of Williams Cnty., State of N.D. v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (remanding nuisance claim because "liability for damage caused by a nuisance turns on whether the defendant is in control of the instrumentality alleged to constitute a nuisance, since without control a defendant cannot abate the nuisance.")).

Courts nationwide have dismissed public nuisance claims against manufacturers because they lack control over the products once sold. *See Town of Westport v. Monsanto Co.*, 2015 WL 1321466, at *4 (D. Mass. March 24, 2015); *State ex rel. Hunter v. Johnson & Johnson*, 2021 OK 54, ¶ 27; *Belanger v. Com.*, 41 Mass. App. Ct. 668, 670 n. 3 (1996); *Lewis v. Gen. Elec. Co.*, 37 F. Supp. 2d 55 (D. Mass. 1999) (public nuisance claim against General Electric for its disposal of PCBs into a local river); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) ("Since the pleadings do not set forth facts from which it could be concluded that Monsanto retained the right to control the PCBs beyond the point of sale to Westinghouse, we agree with the district court that Monsanto cannot be held liable on a nuisance theory" (and cases cited)); *Cofield v. Lead Indus. Ass'n, Inc.*, CIV.A. MJG-99-3277, 2000 WL 34292681 (D.

Md. Aug. 17, 2000) (and cases cited); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) (New Jersey courts "have enforced the boundary between the well-developed body of product liability law and public nuisance law"); *State of Oklahoma v. Johnson & Johnson,* 499 P.3d 719, 725 (Ok. 2021); *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) ("[W]ere we to permit these complaints to proceed, we would stretch the concept of public nuisance far beyond recognition and would create a new and entirely unbounded tort antithetical to the meaning and inherent theoretical limitations to the tort of public nuisance"); *People ex re. Spitzer v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 196 (N.Y. App. Div. 2003) ("[G]iving a green light to a common-law public nuisance cause of action today will . . . likely open the courthouse doors to a flood of limitless, similar theories of public nuisance . . . against a wide and varied array of other commercial and manufacturing enterprises and activities"); *U.S. Gypsum Co.*, 984 F.2d at 921 (refusing to interpret nuisance to include product liability because then "[n]uisance thus would become a monster that would devour in one gulp the entire law of tort"); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 910 (E.D. Pa. 2000) *aff'd*, 277 F.3d 415 (3d Cir. 2002) ("The refusal of many courts to expand public nuisance law to the manufacturing, marketing, and distribution of products conforms with the elements of public nuisance law"); *Detroit Bd. of Educ. v. Celotex Corp.*, 196 Mich. App. 694, 710, 493 N.W.2d 513, 521 (1992) (Allowing public nuisance to include product liability "would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products").

Additionally, courts recognize that defendants cannot be held liable for public nuisance when they lack the power or authority to abate the public nuisance. *See Atlantic Richfield*, 2018 WL 11358617, at *9–10; *Town of Westport*, 2015 WL 1321466, at *4; *City of Manchester v. Nat'l Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986) (dismissing public nuisance claim against

asbestos manufacturer where manufacturer was no longer in control of asbestos-containing products once plaintiffs purchased them).  In *Town of Westport*, the court concluded that because the plaintiff municipality was in control of the PCB-containing products that were used in the construction of the school, the defendants could not be held liable under a nuisance theory without the "power or authority to maintain or abate these PCB-containing building materials."  *See* 2015 WL 1321466, at *4.

### IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR TRESPASS

#### A.  Plaintiffs fail to allege an unauthorized intrusion by Pharmacia.

Plaintiffs fail to state a claim for trespass because they do not allege an unauthorized intrusion by Pharmacia when Plaintiffs admit they used PCB-containing materials in construction of their schools.

"[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land[.]"  *John Larkin, Inc. v. Marceau*, 184 Vt. 207, 213 (2008) (citation omitted).  Invasion or intrusion "denote[s] the fact that the possessor's interest in the exclusive possession of his land has been invaded by the presence of a person or thing upon it without the possessor's consent."  Restatement Second of Torts § 158, cmt. c (1965).  Consequently, courts have found no invasion – and, therefore, no trespass – when the plaintiff placed the products in its own buildings.  *See Town of Wesport*, 2015 WL 1321466, at *5; *City of Manchester*, 637 F. Supp. at 656 (presence of asbestos-containing products on plaintiff's property is not an unauthorized invasion by manufacturer); *Town of Hooksett Sch. Dist.*, 617 F. Supp. at 133 (finding no unauthorized invasion where plaintiff purchased asbestos-containing product and brought it onto its premises).

For example, in *Town of Westport*, the plaintiff used PCB-containing products in building materials for its schools.  *Town of Westport*, 2015 WL 1321466, at *5.  The plaintiff brought a

trespass claim for the presence of PCBs detected in its schools and alleged, "Monsanto negligently, recklessly, and/or intentionally produced and marketed PCBs in a manner that caused PCBs to contaminate Plaintiffs' property." *Id.* (quotation omitted). In dismissing the plaintiff's trespass claim under Massachusetts law, the court reasoned, "That Defendants sold PCBs with the knowledge they would be used in building materials is not analogous to the entry required even for negligent trespass." *Id.*

Similarly, Plaintiffs in this case allege, "Defendants designed, manufactured, distributed, marketed, and promoted PCB and PCB-containing plasticizer products in a manner that ensured that toxic PCB compounds would invade the Districts' properties." (Doc. No. 23, Compl. at ¶ 187.) Plaintiffs, however, admit PCBs were brought onto their premises for use in building construction materials. (*See id.* ¶ 4.) By incorporating PCB-containing building products into their premises, Plaintiffs caused those products to be on their property. Accordingly, Pharmacia's sale of PCBs to other manufacturers who sold PCB-containing building products for the construction of some of Plaintiffs' schools does not constitute an unauthorized intrusion.

In the BSD case, the court found plaintiff's allegation that Pharmacia "knew its PCBs were substantially certain to enter School property" was sufficient to allege trespass under similar facts. 2023 WL 4175344, at *7. In so doing, however, the BSD court did not account for comment c of section 158 of the Restatement (Second) of Torts, which provides that invasion or intrusion "denote[s] the fact that the possessor's interest in the exclusive possession of his land has been invaded by the presence of a person or thing upon it without the possessor's consent." As the court recognized in *Westport*, Pharmacia sold PCBs in bulk to third parties who incorporated the chemicals into building products ultimately sold to Plaintiffs. There is no allegation that Pharmacia entered Plaintiffs' property. There is no authority recognizing trespass against the

lawful seller of a product that merely entered the plaintiff's property as the result of the installation of certain building materials. *Town of Westport*, 2015 WL 1321466, at *5.

### B. Plaintiffs cannot allege entry onto land of another.

Under Vermont law, a trespass only occurs when the *defendant* "intentionally enters or causes a thing to enter the land of another." *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000). Accordingly, migration of PCBs within the plaintiff's own property cannot constitute a trespass because there is no "entering the land of another." *See Marceau*, 184 Vt. at 210–11; *see also Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F. Supp. 93, 99 (D. Mass. 1990) (release of oil on one's own land cannot constitute trespass under Massachusetts law); *One Wheeler Rd. Associates v. Foxboro Co.*, 843 F. Supp. 792, 798 (D. Mass. Feb. 7, 1994) (release of PCE and TCE on one's own property cannot be a continuing trespass under Massachusetts law).

Plaintiffs allege that PCBs from building products migrated within their buildings onto adjacent surfaces, within or surrounding the school buildings. (Doc. No. 23, Compl. at ¶¶ 8, 125.) Plaintiffs do not allege that PCBs intruded onto their properties from separate properties, or that the escaped PCBs crossed property lines to intrude on a neighbor's property. Rather, Plaintiffs' trespass claim rests on the presence of PCBs originating from and migrating within the same parcel of land. Extending trespass to cover instances where there has been no entry onto the land of another would impermissibly modify Vermont law.

The BSD court did not address this argument. *See* 2023 WL 4175344, at *7. Because Plaintiffs allege trespass based on migration of PCBs within their buildings, Plaintiffs cannot show entry onto the land of another and, therefore, fail to state a claim for trespass as a matter of law.

### C.  Plaintiffs cannot allege invasion of tangible matter.

Finally, the Supreme Court of Vermont has not recognized a trespass claim based on the invasion of intangible matter.  PCBs that have allegedly volatilized from building products are not perceptible to the human senses.  *Town of Westport v. Monsanto Company*, 877 F.3d 58, 66 (1st Cir. 2017).  In *Marceau*, the Supreme Court of Vermont stated that Vermont law was silent on "whether the physical entry onto land of intangible airborne particles can ever be a trespass," and ultimately did not decide the issue.  184 Vt. at 211.  The court, however, did explain, "Traditionally … a defendant's act 'must cause an invasion of the plaintiff's property by some ***tangible matter***.'" 184 Vt. at 211. This was because "trespass deals with direct and tangible interferences with the right to exclusive possession of land." *Id.* (quoting D. Dobbs, The Law of Torts § 50, at 96 (2001)).

The BSD court explained that the "'modern view' in trespass law is to allow an action based on intangible entries."  2023 WL 4175344, at *7 n.2.  As explained above, the Supreme Court of Vermont, however, has not addressed trespass in the context of intangible matter.  This Court – as a federal court sitting in diversity – cannot create new Vermont trespass law to recognize a claim for trespass based on the alleged invasion of intangible matter. *Ackoff-Ortega*, 130 F. Supp. 2d at 446 ("[F]ederal courts do not create state law.").  Accordingly, this Court should decline to extend trespass beyond that which Vermont law recognizes and dismiss Plaintiffs' trespass claim for failing to allege an invasion by tangible matter.

## CONCLUSION

For the reasons set forth above, Pharmacia respectfully requests this Court enter an order dismissing the seventy-nine Plaintiffs that have not been tested and have not been shown to have exceedances of the SALs.  Additionally, Pharmacia respectfully requests dismissal of Counts I, II and V of the Complaint with prejudice.

Dated:  August 23, 2023

**MONSANTO COMPANY, SOLUTIA INC.,
PHARMACIA L.L.C.**

By: */s/Alexandrea L. Nelson*
      **SHEEHEY FURLONG & BEHM P.C.**
      Ian P. Carleton, Esq.
      Alexandrea L. Nelson, Esq.
      Devin T. McKnight, Esq.
      Hannah C. Waite, Esq.
      30 Main Street, 6th Floor
      PO Box 66
      Burlington, VT 05402-0066
      icarleton@sheeheyvt.com
      anelson@sheeheyvt.com
      dmcknight@sheeheyvt.com
      hwaite@sheeheyvt.com

      **SHOOK, HARDY & BACON L.L.P.**
      Thomas M. Goutman (admitted *pro hac vice*)
      Richard L. Campbell (admitted *pro hac vice*)
      Stephen I. Hansen (admitted *pro hac vice*)
      Emyr T. Remy (admitted *pro hac vice*)
      One Federal Street, Suite 2540
      Boston, MA 02110
      (617) 531-1411
      tgoutman@shb.com
      rcampbell@shb.com
      sihansen@shb.com
      remy@shb.com