UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| ADDISON CENTRAL SCHOOL DISTRICT, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) No. 2:23-CV-00164-CR |
| v. | ) ) ) |
| MONSANTO CO., SOLUTIA, INC. and PHARMACIA LLC, | ) ) ) |
| Defendants. | ) ) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The honorable William K. Sessions III of this Court denied a substantially identical FED. R. CIV. P. 12(b)(6) motion to dismiss less than three months ago in the parallel case of *Burlington Sch. Dist. v. Monsanto Co., et al.*, Case No. 2:22-cv-00215-wks (June 26, 2023) [Doc. 33]. Judge Sessions' rationale for denying Defendants' motion to dismiss the plaintiff's nuisance and trespass claims in *Burlington School District* applies with equal force in this case.

Unlike in *Burlington*, Defendants omit statute of limitations from their motion. They instead challenge standing of 79 out of 93 school district plaintiffs based on the status of their testing school buildings for the presence of toxic polychlorinated biphenyls ("PCBs") the Defendants manufactured. Contrary to Defendants' slanted, narrow reading of the Complaint, all 93 Plaintiffs allege a concrete, actual injury in fact caused by Defendants' conduct and capable of redress by a favorable decision. Defendants' dismissal motion should be denied in its entirety.

## BACKGROUND

Ninety-two Vermont school districts and one independent school jointly filed this action alleging their school buildings have dangerous concentrations of highly toxic PCBs made and

1

sold by Defendants. *Complaint*, ¶¶ 1 – 2, 19 – 20. PCBs bio-accumulate in humans. *Id*. ¶ 6. Exposure to even small amounts of PCBs increases the risk of harm to neurological, cognitive, endocrinal, hepatic and other systems. *Id*. They present the greatest danger to children and adolescents, whose susceptibility to PCBs' neurodevelopmental impacts greatly exceeds adults'. *Id*. ¶ 7. A probable carcinogen, PCBs cause deficits in memory, learning, impulse control and intelligence quotient, including in babies born to mothers exposed to PCBs. ¶¶ 51 – 52, 55.

The PCB contamination in Vermont schools originated from construction materials made with the chemical, including plasticizer applications like caulking, glazing, sealants and flooring adhesives. *Id*. ¶ 3. Indoor air contamination from off-gassing of PCBs from such building construction materials was inevitable. *Id*. ¶ 4. PCBs continue vaporizing for decades and persist in the indoor environment for even longer, resulting in progressively increasing air contamination over time. *Id*. PCBs also leach or migrate from applications such as caulking or adhesives into porous surfaces and other building materials they come in contact with, such as masonry, wood and concrete. *Id*. ¶ 5. PCB contamination has been found in the concrete foundations, structural walls and surrounding windows of certain Vermont schools. *Id*. ¶ 15.

Defendants manufactured substantially all of the PCBs in the United States beginning in 1935 and continuing until production ceased in 1977 – as Congress was moving toward banning them outright in 1979. *Id*. ¶¶ 1, 35. Monsanto knew PCBs were highly toxic as early as 1937, and knew PCBs vaporized into the air in the 1940s and early 1950s. *Id*. ¶¶ 59, 80, 83. Monsanto nonetheless knowingly sold its PCB mixtures for use in building materials used for construction in schools that would be used, occupied and attended by children and adolescents. *Id*. ¶ 109.

In 2021, the Vermont General Assembly appropriated $4.5 million for indoor air testing in Vermont schools as follows:

> Sec. E. 709.1  ENVIRONMENTAL CONTINGENCY FUND; POLYCHLORINATED BIPHENYSL (PCBs) TESTING IN SCHOOLS
>
> (a)  Notwithstanding 10 V.S.A. § 1283, of the funds transferred in Sec. D.101(a) of this act to the Environmental Contingency Fund, the Department of Environmental Conservation, in consultation with the Department of Health and the Agency of Education, shall use up to $4,500,000 to complete air indoor quality testing for Polychlorinated Biphenyls (PCBs) in public schools and approved and recognized independent schools that were constructed or renovated before 1980.  All schools subject to this subsection shall test for PCBs on or before July 1, 2024 . . . .

2021 Vt. Acts & Resolves 74, § E.709.1(a).[1]  An additional $500,000 came elsewhere in the same Act.  *Id*. § B.1106(3).  The legislature later extended the completion date to 2027.  *See* 2023 Vt. Acts & Resolves 78, § E.709.1(a).  Defendants admit Vermont's Department of Health established "School Action Levels" of 30 $ng/m^3$ for pre-kindergarten, 60 $ng/m^3$ for kindergarten through sixth grade and 100 $ng/m^3$ for seventh grade and up.  *Defts' Mtn.* at 4.  Defendants also admit some districts have completed testing, while others still await their turn.  *Id*. p. 5.

      The plaintiff districts filed this lawsuit against Monsanto Company, Solutia, Inc. and Pharmacia LLC "to recover past, present, and future costs, losses, damages, and other relief relating to the presence of toxic PCBs manufactured by Monsanto in District properties."  *Complaint*, ¶ 18.  They assert claims for public and private nuisance, strict liability – defective design and failure to warn, trespass and negligence.  Notably, nowhere in the Complaint do Plaintiffs limit the redress they seek to buildings where PCB levels exceed 100 $ng/m^3$.

      Defendants filed this motion attacking the nuisance and trespass claims pursuant to FED. R. CIV. P. 12(b)(6) and the standing of 79 school districts that have not yet received test results showing PCB levels exceeding the health department's "School Action Level."  Plaintiffs attach

---

[1]  A federal court takes judicial notice of the statutes of the state in which it sits.  *Bowen v. Johnston*, 306 U.S. 19, 23 (1939).

a copy of the court's order denying essentially the same Rule 12(b)(6) motion to dismiss in a parallel case on June 26 of this year.  *See* Ex. A.  For the reasons set forth below and in the court's order in *Burlington School District*, Defendants' motion to dismiss should be denied.

## ARGUMENT AND AUTHORITIES

**I.    PLAINTIFFS STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under federal notice pleading standards, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when it asserts "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "The court must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." *Cleveland v. Caplaw Enterp.*, 448 F.3d 518, 521 (2d Cir. 2006) (quotation omitted).  The court does not weigh the evidence or assess the plaintiff's chances of prevailing. *Christiansen v. Omnicom Grp.*, 852 F.3d 195, 201 (2d Cir. 2017).

Plaintiffs' claims meet the federal standard.

**A.    Plaintiffs State a Claim for Private Nuisance.**

Defendants incorrectly claim Vermont limits private nuisances to those arising from a separate, neighboring land.  Neither Vermont law nor the Restatement imposes such a requirement.  Plaintiffs allege Defendants set in motion a chain of events resulting in a substantial and unreasonable interference with Plaintiffs' use and enjoyment of their school buildings.  Their allegations thus state a private nuisance claim upon which relief can be granted.

Under Vermont law, "[a] private nuisance is . . . a substantial and unreasonable interference with a person's interest in the use and enjoyment of land." *Jones v. Hart*, 261 A.3d

1126, 1137 (Vt. 2021) (citation omitted). "An interference is substantial if it exceeds the customary interferences a land user suffers in an organized society, and unreasonable if the gravity of the harm outweighs the utility of the actor's conduct." *Id*. (quotations omitted). "When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one. RESTATEMENT (SECOND) OF TORTS § 821C, *cmt. e* (1979).[2]

Research reveals no Vermont Supreme Court decision considering a private nuisance claim in the context of a product manufacturer. "Where the substantive law of the forum state is uncertain or ambiguous," federal courts must "predict how the highest court of the forum state would resolve the uncertainty or ambiguity," giving "'proper regard' to the decisions of a state's lower courts." *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir. 2003).

The most recent Vermont decision not only holds a product manufacturer can be liable for private nuisance, but post-dates and distinguishes the case Defendants rely on: *State v. Atlantic Richfield Co.*, 2018 WL 11358617 (Vt. Super. July 31, 2018). *See State v. 3M Co.*, 2020 WL 13368654 (Vt. Super. May 28, 2020). *3M* determined an invasion of private use of land "does not mean the harm must originate next door" to be a private nuisance. *3M* at *4. The court noted "[t]he Restatement suggests otherwise," reasoning "private nuisance has reference to the interest invaded and not to the type of conduct that subjects the actor to liability . . . ." *Id*., *quoting* RESTATEMENT § 822 and *cmt. b*. *3M* distinguished *Atlantic Richfield* as aiming to avoid enlarging the statute of limitations – a non-issue both in *3M* and here. *See id*. at *3 – *4.

The recent *Burlington School District* ruling adopts and expands upon *3M*'s rationale. The court noted "liability for a private nuisance may arise where one person's acts set in motion

---

[2]     All citations to "the Restatement" herein are to the Restatement (Second) of Torts (1979).

a force or chain of events resulting in the invasion." *Burlington Sch. Dist. v. Monsanto Co.*, 2023 WL 4175344 at *5 (D. Vt. June 26, 2023), *quoting* RESTATEMENT § 824, *cmt. b*. "The Restatement's 'substantial participation' standard applies to both private and public nuisance claims." *Id.*, *citing* RESTATEMENT § 834 and *cmt. a*; *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 548 (S.D.N.Y. 2022); *In re MTBE Prod. Liab. Litig.*, 725 F.3d 65, 121 (2d Cir. 2013). Plaintiffs' Complaint plainly alleges Defendants' acts – manufacturing and selling toxic PCBs – set in motion a chain of events resulting in the contamination existing in Vermont schools today. *Complaint*, ¶¶ 1 – 5, *inter alia*.

This Court should accord the *3M* decision "proper regard" and follow its reasoning, as was done in *Burlington School District*. Plaintiffs allege a substantial and unreasonable interference with their interest in the use and enjoyment of district school buildings caused by Defendants' acts. Under the Restatement, as well as the *3M* and *Burlington School District* decisions, Plaintiffs' allegations suffice to state a claim for private nuisance.

**B.     Plaintiffs State a Claim for Public Nuisance.**

Where "the harm suffered by the plaintiff is of a different kind . . . he can maintain an action not only on the basis of the private nuisance itself, but also. . . on the basis of the particular harm from the public nuisance." RESTATEMENT § 821C, *cmt. e*. "For public nuisance claims, Vermont follows Section 821B of the Restatement . . . ." *Burlington Sch. Dist.*, 2023 WL 4175344 at *5 (citation omitted). "A public nuisance is an unreasonable interference with a right common to the general public." RESTATEMENT § 821B(1). Unreasonableness depends on:

> [w]hether the conduct involves a significant interference with the public health, the public safety . . . the public comfort or the public convenience, or . . . whether the conduct . . . has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

*Id*. § 821B(2)(a), (c). Plaintiffs' allegations fit the Restatement's definition.

6

Much as the Vermont Supreme Court has yet to rule whether a product manufacturer can be held liable for private nuisance, the same is true for public nuisance. This Court must therefore predict how the Vermont Supreme Court would rule on the question, giving proper regard to lower court decisions in so doing. *See Phansalkar*, 344 F.3d at 199.

      1. <u>Defendants' Sale of PCBs Renders them Liable for Public Nuisance</u>.

Defendants once more invoke *Atlantic Richfield*, claiming as a product manufacturer they lacked ownership or control over the PCBs they manufactured at the time those PCBs caused a public nuisance. Defendants' contention essentially recycles their argument regarding private nuisance that product manufacturers are somehow immunized from nuisances caused by their products after selling them. The same result should follow, and for the same reasons.

The two most recent Vermont cases reject Defendants' narrow construction of Vermont public nuisance law. *See 3M* at *3; *State v. Purdue Pharma L.P.*, 2019 WL 13274415 (Vt. Super. March 19, 2019) (denying dismissal of public nuisance claim arising from opioid epidemic). *Purdue Pharma* and *3M* both ruled consistently with the Restatement, which expressly reasons that liability for public nuisance "arises because one person's acts set in motion a force or chain of events resulting in the invasion." RESTATEMENT § 824, *cmt. b*. "The acts . . . may be an indirect cause of the invasion . . . ." *Id*.

*Purdue Pharma* expressly cabined *Atlantic Ritchfield* on similar bases as set forth in *Burlington School District*. "[W]hat the court was concerned with in *Atlantic Richfield* was the expansion of the statute of limitations." *Burlington Sch. Dist.*, 2023 WL 4175344 at *3. "[T]he relief sought by the State would require entry onto private lands of non-parties." *Id*. "Those are not concerns in this case." *Id*. The case against dismissal is even stronger here, as Plaintiffs claim a nuisance attributed to land use where the plaintiff in *Purdue Pharma* did not. *See id*.

7

This Court should follow *Purdue Pharma*, *3M*, *Burlington School District* and the Restatement and deny Defendant's motion to dismiss Plaintiffs' public nuisance claim.

    2. <u>Plaintiffs Allege Interference with a Right Common to the General Public</u>.

Defendants claim Plaintiffs' ownership of the school buildings in question somehow vitiates their ability to maintain a public nuisance action. Defendants attempt to fashion a carve-out from public nuisance doctrine embraced by neither Vermont law nor the Restatement.

"[A] public nuisance must impact a right common to the general public." *State v. Howe Cleaners, Inc.*, 9 A.3d 276, 294 (Vt. 2010), *citing* RESTATEMENT § 821B(1). "A public right is one common to all members of the general public. It is collective in nature and not like the individual right that everyone has not to be . . . negligently injured." RESTATEMENT § 821B, *cmt. g*. There exists just about nothing more common or collective in the United States of America or The Green Mountain State than public school buildings. The fact that public school buildings are owned by public school districts – creatures of state government – does not make them non-public facilities or render their services somehow not public services.

None of Defendants' cited authorities apply. The case of *Lorman v. City of Rutland*, 207 Vt. 598, 604 – 5 (Vt. 2018), held municipal and/or discretionary function immunity barred homeowners' negligence, trespass and nuisance claims – it did not consider a governmental entity's ability to maintain a public nuisance action. Nor did *Hunters, Anglers and Trappers Ass'n of Vermont, Inc. v. Winooski Valley Park Dist.*, 181 Vt. 12, 16 – 17 (2006), limit or even consider a government body's ability to bring a public nuisance claim for damage occurring to the public on or in public property. *Hunters* instead considered whether a public park district could ban hunting on its grounds (it could). For all their puffing about the distinction between the governmental and proprietary capacities of school districts, Defendants fail to cite any

authority suggesting that distinction restricts a school district's ability to bring a public nuisance action. Defendants' argument simply devolves once more into the assertion that "Plaintiffs' public nuisance cause of action is at its core a product liability action . . . ." *Defts' Mtn.* at 15.

Even if California law applied, this Court should look to recent federal decisions rather than older California lower court cases Defendants' mis-apply. *See In re JUUL Labs, Inc.*, 497 F.Supp.3d 552, 647 – 648 (N.D. Cal. 2020) (allowing public nuisance claims against vape manufacturers for vaping epidemic in schools); *In re JUUL Labs, Inc.*, 533 F.Supp.3d 858, 876 – 877 (N.D. Cal. 2021) (same). California's highest court decided neither case Defendants cite: *County of Santa Clara v. Atlantic Richfield Co.*, 40 Cal. Rptr.3d 313 (Cal. App. 6 Dist. 2006) and *City of San Diego v. U.S. Gypsum Co.*, 35 Cal. Rptr.2d 876 (Cal. App. 2 Dist. 1994). *Santa Clara* reversed demurrer of public entities' private nuisance claim, holding it was "not premised on a defect in a product or a failure to warn but on affirmative conduct that assisted in the creation of a hazardous condition." *Santa Clara*, 40 Cal. Rptr.3d at 328, 330 (emphasis added). "A public nuisance cause of action is not premised on a defect in a product or a failure to warn but on affirmative conduct that assisted in the creation of the hazardous condition." *Id*. Here Plaintiffs allege similar conduct beyond a simple products action. *See, e.g.*, *Complaint*, ¶¶ 47, 75, 78, 84 – 89, 100 – 103, 107, 109, 111, 114, 139, 141, 144 – 145. *Santa Clara* also distinguishes *San Diego*. *See Santa Clara*, 40 Cal.Rptr. at 328 ("The reasoning in *San Diego* . . . does not dictate the result before us.").

Monsanto has lost similar motions on similar grounds involving the same toxic PCBs before. *See Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007). Plaintiffs adequately allege Defendants' conduct interfered with a right common to the general public. Defendants' motion to dismiss should therefore be denied.

### C. Plaintiffs State a Claim for Trespass.

Defendants concede the court in *Burlington School District* "found plaintiff's allegations that Pharmacia 'knew its PCBs were substantially certain to enter School property' was sufficient to allege trespass under similar facts." *Deft's Mtn.* at 19, *citing Burlington Sch. Dist.*, 2023 WL 4175344 at *7. As the court ruled under virtually identical circumstances, Plaintiffs state a claim for trespass under the applicable Restatement provisions and commentary.

"Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another." *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000), *citing* RESTATEMENT § 158(a). While Vermont's highest court has explicitly refrained from ruling on whether airborne contaminants can effectuate a trespass, a comment to the very same Restatement provision the Vermont Supreme Court cited in *Canton* states "[i]t is enough than an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter." RESTATEMENT § 158, *cmt. i*; *see John Larkin, Inc. v. Marceau*, 184 Vt. 207, 213 (2008) ("We leave for another day the question of whether the intrusion of airborne particulates may ever be a trespass, and, if so, what impact is required to sustain such an action.").

Plaintiffs' allegations fit § 158 and comments i and j. "Defendants intentionally . . . sold PCB . . . products for use in building construction materials with the knowledge that they would inevitably cause contamination of . . . the buildings in which they were incorporated, including the Districts' properties." *Complaint*, ¶ 191. "Defendants knew that their PCBs would end up in Districts' properties, namely the Districts' schools' campuses and facilities, when used as intended." *Id.* ¶ 92. *Burlington School District* held similar allegations sufficient to establish trespass. *Burlington Sch. Dist.*, 2023 WL 4175344 at *7. The same result should follow here.

Not finding any Vermont law supporting their position, Defendants turn to cases from neighboring states that <u>all</u> fail to take Restatement § 158, comments i and j into account. Defendants instead rely on comment c to the same Restatement section, but that comment merely defines "intrusion" in a manner consistent with Plaintiffs' position: an "intrusion" may be perpetrated by a "thing," not just a person. *See* RESTATEMENT § 158, comment c.[3] Taken together, the two comments contemplate a cause for trespass based on the facts alleged. Restatement §§ 165 (reckless or negligent trespass) and 892(B) also support Plaintiffs' position (no consent to entry where there transpires "a substantial mistake [by a landowner] concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other or is induced by the other's misrepresentation.").

Defendants again repurpose the same "adjacent property" argument for the trespass claim as for the nuisance claims. Though they complain the *Burlington School District* court declined to address their "adjacent property" argument directly with respect to trespass, the court fully addressed the argument with respect to the nuisance theories pled. Here again, Defendants cite out-of-state cases but not pertinent provisions of the Restatement followed by Vermont courts. The weight of the applicable authority supports denying Defendants' dismissal motion.

Plaintiffs sufficiently state a claim for trespass upon which relief can be granted under the applicable Restatement provisions.

## II. ALL PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS.

All Plaintiffs allege a substantial injury in fact and therefore have Article III standing to maintain this action. Defendants' improperly narrow reading of the Complaint incorrectly

---

[3] For the Court's convenience, a complete copy of Restatement § 158 and comments is attached as Ex. B.

assumes "regulatory exceedances" are the only injury complained of. The Court should decline Defendants' invitation to declare a winner before many districts have been able to complete testing for the presence of Defendants' toxic product.

"Standing is a federal jurisdictional question determining the power of the court to entertain the suit." *A.H. by and through Hester v. French*, 555 F. Supp. 3d 21, 32 (D. Vt. 2021), *quoting Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010). "In ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(1), the allegations of the complaint are to be construed favorably to the pleader." *OMYA, Inc. v. Vermont*, 80 F. Supp. 2d 211, 214 (D. Vt. 2000) (denying 12(b)(1) motion to dismiss) (citation omitted). "The complaint is viewed liberally and the court accepts as true all uncontroverted material facts alleged in the complaint." *Id*.

To establish standing, "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation omitted). "[T]here must be a causal connection between the injury and the conduct complained of . . . and . . . it must be 'likely' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id*. at 560 – 561 (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice because on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Valente v. French*, 2021 WL 3620073, *9 (D. Vt. Aug. 16, 2021) (citation and quotation omitted).

The allegations in the Complaint concerning standing could not be more straightforward: "Plaintiffs' premises have dangerously elevated concentrations of Defendants' PCBs."

*Complaint*, ¶ 2. "The Vermont Department of Health has also emphasized that even concentrations below [the School Action Level of 100 ng/m$^3$ for grades 7 – 12] will cause an increased risk in cancer, that the higher SAL value is based in part on the challenges of removing PCBs that are so widespread . . . ." *Id*. ¶ 11. Said another way, just because some buildings might not exceed the regulatory threshold does not mean there has been no injury caused by the presence PCBs in those buildings. "The remediation and/or design and construction of replacement facilities, and demolition and removal of PCB-contaminated facilities and soils, will cost Plaintiffs many millions of dollars, and in the aggregate hundreds of millions, if not billions, of dollars." *Id*. ¶ 16. "In the absence of elevated PCB concentrations, the existing campus facilities would have remained safely usable." *Id*. ¶ 17. The plaintiff districts seek "to recover past, present, and future costs, losses, damages, and other relief relating to the presence of toxic BPCBs manufactured by Monsanto in District properties." *Id*. ¶ 18.

These allegations easily meet the standing requirements established in *Lujan* for all school district plaintiffs herein. Plaintiffs assert a concrete, particularized and actual injury in fact. *Id*. ¶¶ 2, 11, 16, 18, 132 – 136, 152 – 154, 168 – 169, 182 – 183, 187, 188 – 190, 202 – 203; *see Lujan*, 504 U.S. at 560. The Complaint alleges a direct causal link between Plaintiffs' injury of having toxic PCBs in the indoor air schoolchildren breathe and Monsanto's manufacture and sale of those same PCBs. *See Complaint*, ¶¶ 129, 150, 162, 167, 182, 187, 193, 202; *see Lujan*, 504 U.S. at 560. And the injury caused by Defendants' PCBs will be redressed by a favorable outcome in this lawsuit. *See Complaint* at ¶¶ 44 – 45; *see Lujan*, 504 U.S. at 560.

Monsanto focuses its Motion on *Lujan*'s first requirement: whether the Complaint alleges an injury in fact. "Injury in fact is a low threshold, which we have held need not be capable of sustaining a valid cause of action, but may simply be the fear or anxiety of future

harm." *Ross v. Bank of America, N.A.*, 524 F.3d 217, 222 (2d Cir. 2008), *quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). The United States Supreme Court has "defined the requirement of a concrete injury as a harm that actually exists – now or as a risk of future harm." *Sarwar v. Patel Investments, Inc.*, 2022 WL 1422196 *3 (D. Vt. May 5, 2022), *citing Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation and quotation omitted).

Dissatisfied with what the Complaint actually says, Defendants claim 79 of the 93 plaintiffs have yet to detect a greater than 100 ng/m$^3$ concentration of PCBs in their buildings. In so doing, Defendants arbitrarily assume there can be no "injury in fact" absent a regulatory "exceedance." To the contrary, while smaller concentrations of PCBs may not trigger mandatory remediation pursuant to the dictates of the Department of Health, that does not mean toxic PCBs are not present, are not causing harm and/or are not in need of remediation or abatement.

Defendants also claim many districts have yet to complete or in some cases schedule PCB testing on their buildings. For these school districts, Defendants essentially ask the Court to end the inquiry and declare a winner before those districts can even ascertain the extent to which Defendants' toxic PCBs permeate the air their students breathe. While such extrinsic evidence is inappropriate on a motion to dismiss, even if allowable, it does not – as Defendants incorrectly contend – render Plaintiffs' injuries speculative. Plaintiffs allege present harm due to the presence of PCBs in their buildings. *See Complaint*, ¶ 2. Indeed, as PCBs are so toxic they were banned in the late 1970s, PCBs have been causing damage in Vermont school buildings for a

very long time.  Even if it were appropriate to get into evidence at this juncture, testing is by no means the only evidentiary means of demonstrating a presence of PCBs in a school building.[4]

The solitary case Defendants cite as supportive of their argument, *Forziano v. Indep. Group Home Living Program, Inc.*, 613 Fed. Appx. 15, 17 (2d Cir. 2015), involved a developmentally disabled couple living in a publicly funded group home that wanted to cohabitate and feared "they may forced to move out of [the facility] at some point." *Id*.  While presumably Defendants are trying to analogize Mr. Forziano and Ms. Samuels' claim to a Vermont school district that may not ultimately be required by Vermont law to raze its buildings, Defendants' argument ignores that Plaintiffs are suing for damages and injuries beyond and apart from the Vermont Department of Health-ordered remediation.

All Plaintiffs possess Article III standing to prosecute this action.  This Court should grant them the ability to gather the evidence they need to make their case and deny Defendants' FED. R. CIV. P. 12(b)(1) motion to dismiss based on standing.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court enter its Order denying Defendants' Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend their Complaint, and for such other and further relief as the Court deems just under the circumstances.

---

[4] The Court ought not convert Defendants' motion into one for summary judgment based on Defendants' reliance on evidence extrinsic to the Complaint.  *See, e.g. Vermont Public Interest Research Group v. U.S. Fish & Wildlife Svc.*, 247 F. Supp.2d 495 (D. Vt. 2002) (converting 12(b)(1) standing motion into summary judgment motion).  If the Court converts the motion, Plaintiffs request leave to seek relief pursuant to FED. R. CIV. P. 56(d).

Dated:  October 6, 2023

LYNN, LYNN, BLACKMAN & MANITSKY, P.C.


 /s/ Pietro J. Lynn
Pietro J. Lynn
plynn@lynnlawvt.com
76 St. Paul Street, Suite 400
Burlington, VT  05401
(802) 860-1500

FRAZER PLC
T. Roe Frazer II (pro hac vice)
roe@frazer.law
Thomas R. Frazer III (pro hac vice)
trey@frazer.law
J. Grant LaBar (pro hac vice)
grant@frazer.law
30 Burton Hills Road, Suite 450
Nashville, TN  37215
(615) 647-6464

ONDERLAW, LLC
William W. Blair (pro hac vice)
blair@onderlaw.com
110 East Lockwood
St. Louis, MO  63119
(314) 963-9000

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 6th day of October, 2023 the foregoing was filed electronically via the ECF / CM system with the Clerk of the Court for purposes of serving a Notice of Electronic Filing upon all counsel of record via electronic mail.

    /s/ Pietro J. Lynn