2023 WL 4175344
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

BURLINGTON SCHOOL DISTRICT, Plaintiff,

v.

MONSANTO CO., Solutia, Inc.,
and Pharmacia LLC, Defendants.

Case No. 2:22-cv-215
|
Signed June 26, 2023

**Attorneys and Law Firms**

Emily J. Joselson, Esq., Langrock Sperry & Wool, LLP, Middlebury, VT, Lisa B. Shelkrot, Esq., Langrock Sperry & Wool, Burlington, VT, Wesley Kelman, Esq., Pro Hac Vice, Matthew F. Pawa, Esq., Seeger Weiss LLP, Newton Centre, MA, Viola Vetter, Esq., Pro Hac Vice, Grant & Eisenhofer P.A., Wilmington, DE, for Plaintiff.

Ian P. Carleton, Esq., Devin T. McKnight, Esq., Alexandrea L. Nelson, Esq., Sheehey Furlong & Behm P.C., Burlington, VT, Stephen I. Hansen, Esq., Pro Hac Vice, Richard L. Campbell, Esq., Shook, Hardy & Bacon LLP, Boston, MA, Thomas M. Goutman, Esq., Pro Hac Vice, Shook, Hardy & Bacon L.L.P., Philadelphia, PA, for Defendants.

### OPINION AND ORDER

William K. Sessions III, United States District Court Judge

 *1  The Burlington School District ("BSD") commenced this action after discovering polychlorinated biphenyls ("PCBs") at Burlington High School. Defendants Monsanto Co., Solutia, Inc., and Pharmacia LLC (collectively "Monsanto") are successors to the old Monsanto company, which was the primary manufacturer of PCBs in the United States for several decades. The Complaint alleges that Monsanto failed to alert BSD to the dangers posed by the presence of PCBs in school buildings, testing revealed dangerous levels of PCBs on the school campus, and Monsanto is now liable for the cost of razing and rebuilding the school. Pending before the Court is Monsanto's motion to dismiss the entire case as untimely, and in the alternative to dismiss BSD's public nuisance, private nuisance, and trespass counts for failure to state a claim.

For the reasons set forth below, the motion to dismiss is denied.

### Factual Background

According to the allegations in the Complaint, Monsanto manufactured, marketed, sold, and distributed PCBs beginning in the 1920s. At least 99% of all PCBs sold in the United States were manufactured by Monsanto. PCBs were used in building materials and have reportedly been shown to off-gas harmful toxins. The Complaint alleges that Monsanto knew about the dangers posed by PCBs as early as the 1930s and misled the public, including BSD, about those dangers. Monsanto stopped manufacturing PCBs in the 1970s.

BSD owns Burlington High School and Burlington Technical Center (the "School"). Most of the six School buildings were constructed in the mid-1960s. PCBs were discovered at the School in July 2019 in the course of environmental testing related to a planned renovation of the campus. Additional testing in 2020 allegedly revealed PCB levels that exceeded health and safety standards.

As a result of the high PCB levels, BSD shut down the School in September 2020 and leased a former Macy's department store to serve as a temporary educational facility for its students. The Complaint alleges that after exploring options for remediating the School, BSD determined that it needed to raze most of the buildings and replace them. Design, construction, and replacement of the facilities, together with demolition and removal of PCB-contaminated facilities and soils, will reportedly cost at least $190 million. BSD brings this lawsuit against Monsanto to recover those costs.

The Complaint asserts six causes of action: public nuisance; private nuisance; strict liability – defective design; strict liability – failure to warn; trespass; and negligence. Pending before the Court is Monsanto's motion to dismiss the Complaint. Monsanto argues in part that all of BSD's claims are barred by Vermont's six-year statute of limitations because BSD knew or reasonably should have known, no later than 2015, that school buildings built in the 1960s could have actionable levels of PCBs. BSD filed its Complaint in 2022. Monsanto also argues that BSD has failed to state plausible claims for private nuisance, public nuisance, and trespass as a matter of law. BSD opposes the motion to dismiss.

## Discussion

### I. Motion to Dismiss Standard

**\*2** Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when the plaintiff fails to allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

### II. Timeliness

There is no dispute that BSD's claims are subject to Vermont's statutory limitations period for civil actions. Under the Vermont statute, 12 V.S.A. § 511, a civil action must "be commenced within six years after the cause of action accrues." "[A]ccrual occurs upon 'discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery.' " *Sutton v. Purzycki*, 2022 VT 56, ¶ 81 (quoting *Abajian v. TruexCullins, Inc.*, 2017 VT 74, ¶ 12). "In other words, discovery occurs and the limitations period begins when a plaintiff 'knows or should know of the injury and its cause.' " *Sutton*, 2022 VT 56, ¶ 81 (quoting *McLaren v. Gabel*, 2020 VT 8, ¶ 35).[1]

Dismissal based on a statute of limitations is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis and citation omitted); *see also Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("[D]ismissal is appropriate only if a complaint clearly shows the claim is out of time."). Dismissal is not appropriate when, notwithstanding a plaintiff's allegations and any judicially-noticeable facts, there remain material questions of fact. *See, e.g.*, *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007) ("A statute of limitations defense [ ] most often ... requires a factual inquiry beyond the face of the complaint"). "[T]he defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued." *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citation omitted).

BSD filed its Complaint on December 9, 2022, approximately three years after receiving the PCB test results for the School. Monsanto contends that BSD should have known sooner, and by 2015 at the latest, about the presence of PCBs. For support, Monsanto cites allegations in the Complaint describing public awareness of PCBs and their inherent dangers. Monsanto also cites a 2013 memorandum from the Vermont Department of Health, in which the State noted elevated levels of PCBs in schools in the Northeast and described a new pilot study to investigate PCBs in Vermont schools. The following year, the Department of Health notified BSD that it had detected PCBs above acceptable screening levels at an elementary school within the school district. In 2015, the federal Environmental Protection Agency ("EPA") notified schools of the widespread use of PCBs in building materials and recommended that schools consider remediation and, if appropriate, indoor air testing.

**\*3** BSD concedes the allegations in its Complaint and argues that those facts, together with the information cited by Monsanto, were insufficient to trigger the limitations period. BSD contends that the information distributed prior to 2019 was non-specific, that the question of claim accrual involves issues of fact to be explored in discovery, and that dismissal at this early stage in the case would be premature. The Court agrees.

The information cited by Monsanto suggests BSD knew or should have known that, in general, older buildings could contain PCBs. The allegations and cited evidence do not establish what BSD knew or should have known about the need to test for actionable levels of PCBs at the School. The Department of Health observed that PCBs were being discovered in buildings within the northeastern United States. When a pilot study tested for PCBs in four Vermont schools,

"[t]here were detections of PCBs in two of the schools" including a BSD elementary school. ECF No. 11-3 at 2. The recommendation from State officials was to replace certain light fixtures and clean surfaces. Testing at other schools was recommended ("You should consider testing") if the schools had old and/or leaking fluorescent lighting ballasts that were likely to contain PCBs, or if the schools had not participated in a State-sponsored lighting upgrade in the 1990s. *Id.* Nothing in the Complaint or the information cited by Monsanto indicates whether BSD was compelled to consider testing at that time. Nor does the record show that BSD knew or should have known of "the injury and its cause." *McLaren,* 2020 VT 8, ¶ 35.

The cited guidance from the EPA suggested consulting with the EPA Regional PCB Coordinator with respect to any potential testing. ECF No. 11-5 at 1. The document also acknowledged that each situation was unique, and that multiple factors needed to be considered when deciding on testing. *Id.* at 11. The EPA further recommended that schools conduct testing during renovations and repairs, *id.* at 10, which is what BSD did in 2019. In sum, the evidence cited in the motion to dismiss does not establish that BSD was on sufficient notice to perform testing, or that its knowledge of an injury was sufficient for a cause of action to accrue, prior to 2019. *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.,* 725 F.3d 65, 112 (2d Cir. 2013) (holding that despite city's knowledge of likely contamination, claim did not accrue when city did not know whether property "had already been contaminated or that the contamination was significant enough to justify an immediate or specific remediation effort").

Other courts have reached this same conclusion in PCB-related litigation. *City of San Jose v. Monsanto Co.,* 231 F. Supp. 3d 357, 366 (N.D. Cal. 2017) (noting that "[t]he extent of the Cities' knowledge of PCB contamination, and whether that knowledge limits the available relief, cannot be decided on a motion to dismiss"); *Cnty. of Los Angeles v. Monsanto Co.,* No. CV 19-4694-GW-AFMX, 2019 WL 13064885, at *8 (C.D. Cal. Nov. 21, 2019) ("While Defendants have pointed to facts indicating that the waters managed by Plaintiffs were subject to regulation of PCBs between 2005 and 2012, Defendants have not shown that that necessarily means that Plaintiffs would have known of their injury at those times."). For example, in *Town of Princeton v. Monsanto Company, Solutia Inc., and Pharmacia Corporation,* the court found that a general press release issued by the EPA to school administrators expressing the dangers of PCBs and recommending remedial measures was "on its own [in]sufficient notice as a matter of law." 202 F. Supp. 3d 181, 189 (D. Mass. 2016). "Without the benefit of discovery, the Court's context within which to assess the degree of notice provided by the press release is significantly limited." *Id.* at 190.

**\*4** Because Monsanto has raised the statute of limitations issue at the motion to dismiss stage, the Court must "draw all reasonable inferences in favor" of BSD. *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). Employing that standard, the Court finds that Monsanto is not entitled to dismissal based upon on the current record. *See, e.g., Allen v. Dairy Farmers of Am., Inc.,* 748 F. Supp. 2d 323, 354 (D. Vt. 2010) ("A statute of limitations analysis is generally riddled with questions of fact."). The motion to dismiss for failure to file within the statutory time limit is therefore denied.

### III. Nuisance

Monsanto next moves to dismiss BSD's claims of private and public nuisance. A private nuisance is "a substantial and unreasonable interference with a person's interest in the use and enjoyment of land." *Jones v. Hart,* 2021 VT 61, ¶ 26. A public nuisance is "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B(1); *see State v. Howe Cleaners, Inc.,* 2010 VT 70, ¶ 49 (citations omitted). Although private and public nuisance are distinct causes of action, the distinction lies primarily in the nature and breadth of the impact. "The public nuisance is an injury to the public at large or to all persons who come in contact with it; the private nuisance is injury to an individual or a limited number of individuals only." *Adams v. Comm'rs of Trappe,* 102 A.2d 830, 834 (Md. 1954); *see also Wietzke v. Chesapeake Conf. Ass'n,* 26 A.3d 931, 943 (Md. 2011) (same). "When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one." *Willmschen v. Trinity Lakes Improvement Ass'n,* 840 N.E.2d 1275, 1282–83 (Ill. App. 2005) (quoting Restatement (Second) of Torts § 821C, comment e).

The Vermont Supreme Court has not addressed either type of claim in the context of a product manufacturer defendant. When state law is uncertain or ambiguous on an issue, the

role of this Court is "carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (internal quotation marks omitted). "In doing so, [the Court] give[s] fullest weight to the decisions of a state's highest court and proper regard to the decisions of a state's lower courts, and [ ] also consider[s] the decisions of federal courts construing state law." *Id.* (internal quotation marks omitted). The Court further notes that when state law is undeveloped, "the Vermont Supreme Court frequently looks to the Restatement for guidance." *Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 368 (D. Vt. 2021) (citing *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 9 ("We frequently have adopted provisions of this Restatement where our law is undeveloped.")).

Monsanto first challenges BSD's private nuisance claim, arguing that such a claim is limited to nuisances caused by a defendant's use of its own, neighboring property. BSD contends that a private nuisance claim may also be brought against a manufacturer whose land is not nearby. Both sides claim support from Vermont lower court rulings. *Compare State v. 3M Co.*, No. 547-6-19 CNCV, 2020 WL 13368654, at *4 (Vt. Super. May 28, 2020) (concluding that a private nuisance claim need not originate on a neighboring property) with *State v. Atl. Richfield Co.*, No. 340-6-14 WNCV, 2018 WL 11358617, at *9 (Vt. Super. July 31, 2018) (dismissing private nuisance claim alleging contamination of Vermont waters from a non-neighboring source). The Restatement (Second) of Torts does not specify whether a private nuisance must originate on neighboring land. *See* Restatement (Second) of Torts § 821D.

**\*5** With regard to public nuisance, the same lower Vermont courts again reached different conclusions. *Atlantic Richfield* rejected a public nuisance claim brought against manufacturers and distributors of gasoline containing MTBE, although the court focused on statute of limitations and private access concerns that are not presented here. 2018 WL 11358617, *11; *see State v. Purdue Pharma L.P.*, No. 757-9-18 CNCV, 2019 WL 13274415, at *3 (Vt. Super. Mar. 19, 2019) (finding public nuisance analysis in *Atlantic Richfield* not "useful" since statute of limitations and access to private lands were "not concerns in this case"). The *3M* court allowed a public nuisance claim, noting "language in the Restatement suggesting that ... 'substantial participation' in a chain of actions can be sufficient" for liability. 2020 WL 13368654, at *3 (citing Restatement (Second) of Torts § 834 and cmts. d and e).

As noted in *3M*, the Restatement provides that "[o]ne is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Restatement (Second) of Torts § 834. The Restatement further provides that liability for private nuisance may arise where "one person's acts set in motion a force or chain of events resulting in the invasion." Restatement (Second) of Torts § 824 cmt. b (cited in *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1133 (Ill. 2004)). For public nuisance claims, Vermont follows Section 821B of the Restatement, *Howe Cleaners, Inc.*, 2010 VT 70, ¶ 49, which describes, in part, an unreasonable interference with a public right where the "conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right." Restatement (Second) of Torts § 821B(1), (2)(c).

The Restatement's "substantial participation" standard applies to both private and public nuisance claims. Restatement (Second) of Torts § 834 & cmt. a. Courts have held that "substantial participation" is "satisfied when there was evidence that the defendant, having sold a toxic or dangerous substance to an identified third party, continued to sell the same product to the third party for a profit knowing that that third party would continue to use it in a manner that maintained the nuisance." *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 548 (S.D.N.Y. 2022) (referencing New York law); *see also In re MTBE Prod. Liab. Litig.*, 725 F.3d at 121 (citing Restatement (Second) of Torts § 834 and upholding jury verdict where "Exxon was aware of MTBE's tendency to spread quickly once released into groundwater. In sum, the evidence supports a finding that Exxon knew that MTBE gasoline it manufactured would make its way into Queens, where it was likely to be spilled, and once spilled, would likely infiltrate the property of others.").

Here, Monsanto manufactured products with the knowledge that those products would be used in buildings, and allegedly knew that the products would be harmful to the people around them. The Complaint also alleges that Monsanto withheld its knowledge from the public. Accepting those allegations as true, it is plausible that Monsanto "substantially participated"

in the creation of a hazardous condition that deprived BSD of the enjoyment of its property and significantly infringed upon the public right. *See* [Abbatiello v. Monsanto Co.](), 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007) (allowing nuisance claim to proceed on a motion to dismiss where Monsanto allegedly made a conscious decision to suppress and conceal facts).

**\*6** Monsanto argues that it cannot be held liable for nuisance because it did not control the PCB-containing products when they allegedly caused harm. The PCBs were instead controlled by the buyers of Monsanto's products, and it was they who placed those products in the School. The *3M* court addressed and rejected this same "control" argument:

> 3M argues that the complaint lacks a necessary allegation that the Defendants controlled the PFAS at the time of the nuisance, and could not so allege because Defendants relinquished control when they sold the products. 3M cites no Vermont caselaw supporting this argument, and the State accurately points to language in the Restatement suggesting that a defendant may be held liable for harm that continues after that defendant's actions have ceased, and that "substantial participation" in a chain of actions can be sufficient. Restatement (Second) of Torts § 834 and cmts. d and e (1979). Other courts have rejected similar claims by manufacturers. *See, e.g.,* [In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.](), 725 F.3d 65, 121 (2d Cir. 2013).

2020 WL 13368654, at \*3. Moreover, "[c]ourts interpreting [Restatement (Second) of Torts § 821B] generally reject attempts to impose a control requirement, instead focusing on whether the defendant created or participated in the creation of the nuisance." [Illinois ex rel. Raoul v. Monsanto Co.](), No. 22 C 5339, 2023 WL 3292591, at \*2 (N.D. Ill. May 5, 2023) (citation omitted); *see also* [Mayor & City Council of Baltimore v. Monsanto Co.](), No. CV RDB-19-0483, 2020 WL 1529014, at \*9 (D. Md. Mar. 31, 2020) ("control is not a required element to plead public nuisance under Maryland law").

Given the significant guidance provided by the Restatement, and the Vermont Supreme Court's established practice of turning to the Restatement when presented with novel legal questions, the Court predicts that Vermont would allow BSD's nuisance claims to proceed at the motion to dismiss stage. The allegations against Monsanto, yet unproven, describe or infer substantial participation in conduct that was harmful, intentional, and unreasonable. Such conduct has been held sufficient for a nuisance claim. *See, e.g.,* [Illinois ex rel. Raoul](), 2023 WL 3292591, at \*3 (denying Monsanto's motion to dismiss a nuisance claim); [Commonwealth v. Monsanto Co.](), 269 A.3d 623, 652-53 (Pa. Commw. Ct. 2021) (allowing public nuisance claim where Monsanto was allegedly "responsible for PCBs entering the Commonwealth's waters because Defendants knew that the uses for which they marketed, sold, and distributed PCB mixtures would result in leaching, leaking, and escaping their intended applications and contaminating (*i.e.*, polluting) those waters"); *see also* [United States v. Ira S. Bushey & Sons, Inc.](), 363 F. Supp. 110, 121 (D. Vt. 1973) (citing updated Restatement and upholding federal common law nuisance claim against alleged polluter of Lake Champlain).

Monsanto submits that any extension of Vermont nuisance law requires a "compelling public policy" reason. *See* [Langle v. Kurkul](), 146 Vt. 513, 320 (1986). For such a reason, the Court need look no further than the allegation of knowing and widespread private and public harm resulting from the manufacture and use of PCBs. *See, e.g.,* [Cnty. of Santa Clara v. Atl. Richfield Co.](), 40 Cal. Rptr. 3d 313, 329 (Cal. App. 2006) ("We do not believe that the fact that defendants were manufacturers and distributors of lead means that they may not be held liable for their intentional promotion of the use of lead paint on the interiors of buildings with knowledge of the public health hazard that this use would create."). Monsanto's motion to dismiss BSD's nuisance claims is denied.

### IV. Trespass

**\*7** Monsanto next contends that BSD fails to state a claim for trespass because there was no invasion or intrusion. Specifically, Monsanto contends that PCBs were brought onto the property by BSD itself, and that mere knowledge of the presence of PCBs at the School is insufficient for liability

in trespass. Monsanto also argues that PCBs migrated from building products within the School onto adjacent surfaces also within the School, and thus did not enter (trespass upon) the School from a separate piece of land.

"Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another." *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000) (mem.) (citing Restatement (Second) of Torts § 158(a)).[2] Under the Restatement, "[i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter." Restatement (Second) of Torts § 158 cmt. i; *see also Canton*, 171 Vt. at 552 ("one who causes water to enter the land of another is liable for trespass").

The Complaint alleges that Monsanto knew its PCBs were substantially certain to enter School property. At this early stage in the case, that allegation is sufficient for a plausible claim of common law trespass. *See Illinois ex rel. Raoul*, 2023 WL 3292591, at *4 ("The State has alleged that Monsanto knew that the intended uses of its products would cause PCBs to invade Illinois['] natural resources, due to the laws of physics and chemistry. No more is required for notice pleading."); *see also In re MTBE Prod. Liab. Litig.*, 725 F.3d at 120 (upholding trespass verdict where the jury found it "was substantially certain that [Exxon's] gasoline containing MTBE would leak from the gasoline distribution system and enter groundwater"). The motion to dismiss BSD's trespass claim is denied.

### Conclusion

For the reasons set forth above, Monsanto's motion to dismiss (ECF No. 11) is **denied**.

**All Citations**

Slip Copy, 2023 WL 4175344

### Footnotes

1   BSD informs the Court that the Governor of Vermont recently signed into law S.33, which creates a new accrual date for environmental contamination claims. The new law provides, in part, that a cause of action "shall accrue so long as the contamination remains on or in an affected property or natural resource." ECF No. 32 at 1 (quoting Section 26 of S.33). The accrual date applies to actions that were pending on the effective date of the act. *Id.* at 2. The parties have not fully briefed whether S.33 impacts this case, and the Court offers no opinion on that issue at this time.

2   The Vermont Supreme Court has expressly declined to determine whether the presence of airborne particles constitutes a trespass. *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 14 ("We leave for another day the question of whether the intrusion of airborne particulates may ever be a trespass, and, if so, what impact is required to sustain such an action."). The "modern view" in trespass law is to allow an action based on intangible entries. *See Stephens v. Koch Foods, LLC*, 667 F. Supp. 2d 768, 795 (E.D. Tenn. 2009).

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.