UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| ADDISON CENTRAL SCHOOL DISTRICT, et al.<br><br>Plaintiff,<br><br>v.<br><br>MONSANTO CO., SOLUTIA, INC., and PHARMACIA LLC<br><br>Defendants. | C.A. No. 2:23-CV-00164-CR |

**PHARMACIA'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs do not dispute that 73 Plaintiffs have either not tested their schools at all or tested but demonstrate no exceedance of School Action Levels ("SALs").[1] Instead, Plaintiffs posit a non-actionable theory of property damage based on the mere alleged "presence" of PCBs in schools. By Plaintiffs' own admission, the mere presence of PCBs is insufficient to establish injury as Plaintiffs themselves plead that "the existing campus facilities would have remained safely useable" "[i]n the absence of elevated PCB concentrations." (Doc. No. 23 at ¶ 17.)

For their novel tort theories, Plaintiffs admit that no Vermont Supreme Court precedent exists that expands public or private nuisance law to the sale of a product. Because the Vermont Supreme Court has never abandoned the traditional limitation of private nuisance to claims involving an unreasonable use of neighboring property, this Court should reject Plaintiffs' proposed expansion of private nuisance law to the placement of a product into the stream of commerce. The Court should, likewise, reject Plaintiffs' effort to stretch Vermont public nuisance

---

[1] Again, Pharmacia does not agree or concede that exceedances of the SALs set by the Vermont Department of Health constitute a compensable injury in a civil action. Regardless of the legal viability of Plaintiffs' property damage theory, Plaintiffs failed to plead even their own definition of "injury" tied to SAL exceedances.

law to encompass claims for products liability as contrary to the traditional limits of public nuisance law in Vermont and other jurisdictions. Last, Plaintiffs' allegation that Pharmacia sold PCBs is insufficient to plead an intentional invasion of its property by tangible matter and, therefore, cannot support a trespass claim.

I.   **PLAINTIFFS CANNOT ESTABLISH STANDING FOR 73 PLAINTIFFS**

It is undisputed that, of the 93 Plaintiffs in this action, 73 Plaintiffs do not allege they have exceedances of SALs.  In fact, 10 Plaintiffs have tested all buildings they were required to test and identified zero exceedances of SALs in any of their school buildings; 10 Plaintiffs have tested certain buildings they are required to test, but of those buildings tested, there have been zero exceedances of the SALs; 45 Plaintiffs have not tested any buildings they are required to test or do not have published exceedances of SALs; and an additional eight Plaintiffs are not scheduled to test any of their buildings according to the DEC's testing schedule. (*See* Revised Vermont School Testing Summary, attached as **Exhibit 1**.[2])  Plaintiffs do not dispute these publicly available testing results that conclusively establish that 73 Plaintiffs lack standing.

In an attempt to avoid dismissal, Plaintiffs erroneously contend that the mere alleged presence of PCBs establishes an injury.  (Doc. No. 53 at 14 ("Plaintiffs allege present harm due to the presence of PCBs in their buildings.").)  As the First Circuit recognized, "Given that PCBs are 'invisible to the naked eye,' and 'lack a characteristic odor or appearance to alert users of their presence,' their only deleterious effect is their potential harm to health." *Town of Westport v. Monsanto Company*, 877 F.3d 58, 66 (1st Cir. 2017).  Therefore, "no remediation is necessary—and hence, no property damage results—unless the PCB contamination in a building poses an actual health risk." *Id.*  In other words, to state a property damage claim, Plaintiffs must allege,

---

[2]   This revised exhibit reflects additional test results published after Pharmacia filed its Motion to Dismiss.

not only the presence of PCBs, but also that PCBs have escaped from building products in concentrations that render the buildings unsafe for human occupancy. Plaintiffs, in fact, plead that Vermont only requires Plaintiffs to identify and abate potential sources of PCBs when they exceed SALs. (Doc. No. 23 at ¶ 119.) Indeed, Plaintiffs plead, "In the absence of elevated PCB concentrations, the existing campus facilities would have remained safely useable," Doc. 23 at ¶¶ 17, 127, thereby defeating any claim that the mere alleged presence of PCBs constitutes an injury.

Based on the unrefuted testing data, Plaintiffs also cannot avoid dismissal based on their bald allegation, contrary to the undisputed facts, that "Plaintiffs' premises have dangerously elevated concentrations of Defendants' PCBs." (Doc. No. 23 at ¶ 2.) To survive a Rule 12(b)(1) motion to dismiss, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "[I]t is well established that [courts] need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Id.* at 146. Because the test data undisputedly negates Plaintiffs' bald claim of elevated levels of PCBs for 73 Plaintiffs, *see* Exhibit 1, Plaintiffs' conclusory allegation of dangerous levels of PCBs is not entitled to consideration by this Court.[3]

Last, Plaintiffs' present claim of injury for the alleged fear of future harm constitutes pure speculation absent testing or testing above SALs, and does not confer standing under Plaintiffs'

---

[3] Plaintiffs also incorrectly contend, without citation to authority, that it is inappropriate for the Court to consider Vermont's testing data, Doc. No. 53 at 14, but this Court may take judicial notice of publicly available documents, like the State's testing data, in deciding a motion to dismiss. (Doc. No. 47 at 3, n.2); *see Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). This Court also may consider documents incorporated by reference in the complaint and documents that the complaint "relies heavily upon … rendering the document[s] 'integral' to the complaint" like the State's testing data (Doc. No. 23 at ¶¶ 11-12, 119-125). *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). This is because "the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered," which does not occur when the extraneous material is integral to the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Further, a district court may consider evidence outside the pleadings when ruling on a 12(b)(1) motion to dismiss for lack of standing. *Amidax Trading Group*, 671 F.3d at 145.

own cited authority, *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217, 226 (2d Cir. 2008) ("The requirement that a dispute must be ripe 'prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur.'"). And, Plaintiffs do not plead any right of recovery for fear of future property damage under any theory.

## II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIVATE NUISANCE

"The law of private nuisance springs from the general principle that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." *Myrick v. Peck Elec. Co*., 204 Vt. 128, 131 (2017). Because Vermont law has long-tethered private nuisance law to the unreasonable use of neighboring property, the Superior Court in *State v. Atlantic Richfield Co*., 2018 WL 11358617 (Vt. Super. July 31, 2018), rightly dismissed a private nuisance claim based on the sale and distribution of a product.

Plaintiffs wrongfully urge this Court to reject *Atlantic Richfield* and, instead, follow *State v. 3M Co.*, 2020 WL 13368654 (Vt. Super. May 28, 2020), which allowed a novel private nuisance claim based on the manufacture of a product. As a federal court sitting in diversity, this Court should follow *Atlantic Richfield*, *see City of Philadelphia v. Beretta U.S.A. Corp*., 277 F.3d 415, 421 (3d Cir. 2002), because *3M* is at odds with the weight of Vermont authority, limiting private nuisance claims to neighboring, contemporaneous land uses. *See Windsor School Dist. v. State*, No. 536-10-96WNCV, 2002 WL 34454092, at *27 (Vt. Super. Feb. 15, 2002); *see also Jones v. Hart*, 215 Vt. 258, 276 (2021) (applying the Restatement to a dispute between neighboring landowners); *Myrick*, 204 Vt. at 132 (same); *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 199 Vt. 313, 327 (2015) (same). Indeed, prior to *3M*, there were "no private nuisance cases in Vermont that [we]re grounded in a defendant's conduct unrelated to her or his

use of land or capacity as a landowner." *Atlantic Richfield Co.,* 2018 WL 11358617, at *8. It also does not appear that any other Vermont state court has adopted *3M*. Further, as discussed in Pharmacia's opening brief, *Atlantic Richfield* and the remainder of Vermont authority is consistent with the Restatement (Second) of Torts, which grounds private nuisance claims on the defendant's land use. (*See* Doc. No. 47 at 13.) Because Plaintiffs' private nuisance claim does not arise out of neighboring, competing land use, Plaintiffs failed to state a claim against Pharmacia for private nuisance.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR PUBLIC NUISANCE

Plaintiffs admit that the Vermont Supreme Court has not addressed their novel theory of public nuisance based on the sale of a product. As with Plaintiffs' private nuisance theory, this Court should avoid expanding state nuisance law in ways "not foreshadowed by state precedent." *City of Philadelphia*, 277 F.3d at 421 (refusing to expand Pennsylvania public nuisance law). As the *Atlantic Richfield* court acknowledged, recognizing public nuisance claims that are at their core products liability claims would constitute an unwarranted "[e]nlargement of public nuisance law" in Vermont. 2018 WL 11358617, at *11.

To begin, Plaintiffs fail to allege interference with a right common to the general public. To the contrary, as discussed in Pharmacia's opening brief, Plaintiffs bring their claims as property owners for alleged property damage. Courts have declined to extend similar public nuisance claims to cover what is essentially a products liability claim for property damage. *See County of Santa Clara v. Atlantic Richfield Co.*, 40 Cal. Rptr.3d 313 (Cal. App. 6 Dist. 2006). Plaintiffs incorrectly suggest that the appellate court in *Santa Clara* allowed a public nuisance claim brought by local governmental entities, including school districts, for damage to their buildings from lead paint. (Doc. No. 53 at 9.) *Santa Clara* actually concerned claims by "governmental entities acting

5

for themselves," seeking damages, and also separately on behalf of the People of the State of California. 40 Cal. Rptr.3d at 298. The trial court granted a demurer on both claims and the court of appeals affirmed the demurer of their damage claims brought on their own behalf. *Id.* at 333. With respect to the governmental entities' property damage claims brought on their own behalf, the court of appeals found the claim "like a products liability cause of action because it is, at its core, an action for *damages for injuries caused to plaintiffs' property by a product*." *Id.*

Here, Plaintiffs' claim is like the property damage claim rejected in *Santa Clara*. As explained in Pharmacia's opening brief, Plaintiffs bring this suit as property owners for alleged property damage. (Doc. No. 47 at 14.) Plaintiffs allege the harm they suffered is "different from that suffered by members of the general public, including the costly damage to the Districts' campus facilities." (Doc. No. 23 at ¶ 146.) Accordingly, like the *Santa Clara* court, this Court should reject Plaintiffs' public nuisance claim as a products liability claim in disguise.

Further, Plaintiffs again erroneously contend this Court should follow *3M* as well as *State v. Purdue Pharma L.P.*, 2019 WL 13274415 (Vt. Super. March 19, 2019), instead of *Atlantic Richfield*. First, the *3M* court cited no Vermont authority – and little authority from other jurisdictions – supporting its unwarranted expansion of Vermont nuisance law. The *Atlantic Richfield* court rightly declined to "expand the common law of public nuisance" to cover what was essentially a products liability claim when the defendant lacked control of the instrumentality that allegedly caused damage. 2018 WL 11358617, at *9–13. Second, *Purdue Pharma* is distinguishable because, there, unlike this case involving individual property damage claims, "no damages [we]re sought for injuries to individual patients from Purdue's products." 2019 WL 13274415 at *3. Accordingly, the court rejected defendant's argument that plaintiff was bringing a products liability claim under the guise of a public nuisance claim, explaining, "[T]his is not a

products liability case." *Id.* In fact, unlike Plaintiffs in this case, the State did not even assert a products liability claim in Purdue Pharma. *Id.* at *1. In contrast to *Purdue Pharma*, Plaintiffs in this case each seek to recover for property damage to their individual school facilities for alleged harm caused by Pharmacia's product.[4]

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR TRESPASS

Plaintiffs acknowledge that the Vermont Supreme Court has expressly refrained from deciding whether an imperceptible airborne contaminant can cause a trespass. (Doc. No. 53 at 10.) Again, as a federal court sitting in diversity, this Court should refrain from recognizing a new basis for a trespass claim under Vermont law. *Ackoff-Ortega v. Windswept Pacific Entertainment Co. (Inc.)*, 130 F. Supp. 2d 440, 446 (S.D.N.Y. 2000) ("[F]ederal courts do not create state law.").

Plaintiffs also fail to allege an unauthorized intrusion by Pharmacia as required to state a trespass claim. *John Larkin, Inc. v. Marceau*, 184 Vt. 207, 213 (2008). A n unauthorized invasion or intrusion "denote[s] the fact that the possessor's interest in the exclusive possession of his land has been invaded by the presence of a person or thing upon it without the possessor's consent." Restatement Second of Torts § 158, cmt. c (1965).  As explained in Pharmacia's opening brief, Plaintiffs permitted the presence of PCB-containing products on their property by using them to construct their buildings. *See Town of Wesport v. Monsanto Co.*, No. 14–12041–DJC, 2015 WL 1321466, at *5 (D. Mass. March 24, 2015); *City of Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 656 (D. R.I.) (presence of asbestos-containing products on plaintiff's property is not an unauthorized invasion by manufacturer); *Town of Hooksett Sch. Dist. v. W.R. Grace and Co.*, 617 F. Supp. 126, 133 (D. N.H.) (finding no unauthorized invasion where plaintiff purchased asbestos-

---

[4]     Plaintiffs also mistakenly cite *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007), in support of their public nuisance theory when *Abatiello* concerned a private nuisance claim, not a public nuisance claim, and involved the discharge of PCBs from a manufacturing facility into neighboring lands.  The *Abbatiello* court also rejected the plaintiff's trespass claim.  *Id.* at 542.

7

containing product and brought it onto its premises). Plaintiffs do not attempt to distinguish *Westport*, *Manchester*, or *Hooksett*, but instead mistakenly invoke comments i and j of the Restatement (Second) of Torts § 158, which pertain to the defendant's intent, not the plaintiff's consent. As the court in *Westport* explained, "That Defendants sold PCBs with the knowledge they would be used in building materials is not analogous to the entry required even for negligent trespass." *Town of Westport*, 2015 WL 1321466 at *4–5. Plaintiffs similarly fail to allege any unauthorized entry by Pharmacia, instead attempting to impose liability on the lawful sale of a product that merely entered the plaintiff's property as the result of the installation of certain building materials.

Additionally, neither Plaintiffs nor the Court in *BSD* cite any Vermont authority for the proposition that the passive migration of PCBs within school buildings constitutes a trespass. Under Vermont law, a trespass only occurs when the defendant "intentionally enters or causes a thing to enter the land of another." *Canton v. Graniteville Fire Dist. No. 4*, 171 Vt. 551, 552 (2000). Because Plaintiffs do not allege that PCBs intruded onto their properties from separate properties, they fail to state a claim for trespass. Plaintiffs incorrectly contend that Pharmacia is just repurposing its "adjacent property" argument, but Plaintiffs fail to cite any authority from Vermont recognizing a trespass claim based on products – introduced by the plaintiff – migrating within the plaintiff's property.

**CONCLUSION**

For the reasons set forth above and those in its opening brief, Pharmacia respectfully requests that this Court grant Pharmacia's Motion to Dismiss.

Dated: November 3, 2023.

                **MONSANTO COMPANY, SOLUTIA INC., PHARMACIA L.L.C.**

By: */s/Ian P. Carleton*
     **SHEEHEY FURLONG & BEHM P.C.**
     Ian P. Carleton, Esq.
     Alexandrea L. Nelson, Esq.
     Devin T. McKnight, Esq.
     Hannah C. Waite, Esq.
     30 Main Street, 6th Floor
     PO Box 66
     Burlington, VT 05402-0066
     icarleton@sheeheyvt.com
     anelson@sheeheyvt.com
     dmcknight@sheeheyvt.com
     hwaite@sheeheyvt.com

     **SHOOK, HARDY & BACON L.L.P.**
     Thomas M. Goutman (admitted *pro hac vice*)
     Richard L. Campbell (admitted *pro hac vice*)
     Stephen I. Hansen (admitted *pro hac vice*)
     Emyr T. Remy (admitted *pro hac vice*)
     One Federal Street, Suite 2540
     Boston, MA 02110
     (617) 531-1411
     tgoutman@shb.com
     rcampbell@shb.com
     sihansen@shb.com
     remy@shb.com