UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ADDISON CENTRAL SCHOOL DISTRICT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO CO.; SOLUTIA, INC.; and PHARMACIA LLC, <br><br> Defendants. | Case No. 2:23-cv-00164 |

**ENTRY ORDER DENYING THE STATE OF VERMONT'S
MOTION FOR LEAVE TO FILE AMICUS BRIEF**
(Doc. 57)

Plaintiffs, a group of ninety-two school districts and one independent school in Vermont, bring this case against Defendants Monsanto Co.; Solutia, Inc.; and Pharmacia LLC (collectively, "Defendants"), arising out of the manufacture and sale of products containing polychlorinated biphenyls ("PCBs") used in the construction of Plaintiffs' school buildings prior to 1980. Pending before the court is non-party the State of Vermont's (the "State") motion for leave to file an amicus brief requesting a stay pending resolution of a parallel state court case. (Doc. 57.)

Plaintiffs are represented by Gregory J. Pals, Esq.; J. Grant LaBar, Esq.; Pietro J. Lynn, Esq.; R. Preston Sifton, Jr., Esq.; T. Roe Frazer, II, Esq.; Thomas Roe Frazer, III, Esq.; and William W. Blair, Esq. Defendants are represented by Alexandrea L. Nelson, Esq.; Devin T. McKnight, Esq.; Douglas J. Moore, Esq.; Emyr T. Remy, Esq.; Hannah C. Waite, Esq.; Ian P. Carleton, Esq.; Quentin F. Urquhart, Jr., Esq.; and Stephen I. Hansen, Esq. The State is represented by Assistant Attorneys General Justin E. Kolber and David G. Golubock.

## I. Factual Background and Procedural History.

On June 16, 2023, the State filed a complaint against Defendants in Chittenden County Superior Court seeking recovery for PCB contamination in, among other things, Vermont's public and independent schools (the "State Case").[1] In the State Case, the State alleges Defendants are the successors in liability of Monsanto Company ("Old Monsanto") which manufactured, marketed, sold, and distributed PCBs from 1929 to 1977.

According to the State, Old Monsanto was responsible for manufacturing over 99% of PCBs in the United States and there are no known natural sources of PCBs. The complaint in the State Case asserts PCBs are toxic and have contaminated natural resources and schools in Vermont at levels highly dangerous to human health, and particularly damaging to children and adolescents. In schools, the State claims PCBs in construction materials migrated from their original applications, eventually and indefinitely contaminating indoor air. Old Monsanto allegedly knew its PCBs were toxic and would eventually contaminate the air at levels dangerous to human health and nonetheless marketed its PCBs for use in construction.

In 2021, the Vermont Legislature allocated five million dollars for PCB indoor air testing in schools built or renovated before 1980. *See* 2021 Vt. Acts & Resolves 74, § E.709.1(a) (authorizing use of $4.5 million from Environmental Contingency Fund); *id.* § B.1106(a)(3) (appropriating $500,000). Testing began in spring of 2022 and is scheduled for completion by 2027. The State promulgated school action levels ("SALs") based on the quantity of PCBs detected in indoor air to indicate when schools need to identify and abate potential sources of PCBs inside their buildings. Various schools allegedly have PCB levels in "exceedance" of SALs and PCB contamination may affect more schools not yet tested. (Doc. 57-1 at 10.) The State claims it has spent millions of dollars on testing and will have to spend millions more to remediate the contamination in schools, disrupting Vermont children's educations in the process.

---

[1] The State subsequently amended its complaint in the State Case in October 2023.

In the State Case, the State asserts nine causes of action: public nuisance (Count I); private nuisance (Count II); strict liability for defective design (Count III); strict liability for failure to warn (Count IV); trespass (Count V); negligence (Count VI); unreasonable harm to groundwater pursuant to 10 V.S.A. § 1410 (Count VII); strict liability for hazardous materials pursuant to 10 V.S.A. § 6615(a)(5) (Count VIII); and cost recovery pursuant to 2023 Vt. Acts & Resolves 78, § C.112(d) (Count IX). It seeks compensatory damages for the costs of testing, monitoring, and remediating PCBs in natural resources, as trustee of all Vermont natural resources, and in schools, in its *parens patriae* capacity, as well as punitive damages.

Plaintiffs filed the Complaint against Defendants in this case on June 29, 2023 to recover past, present, and future costs, losses, and damages associated with the presence of PCBs in their properties. The allegations in their Complaint are substantially similar to those in the State Case. They claim public nuisance (Count I), private nuisance (Count II), strict liability for defective design (Count III), strict liability for failure to warn (Count IV), trespass (Count V), and negligence (Count VI).

On August 23, 2023, Defendants moved to dismiss several Plaintiffs from the Complaint for lack of standing and moved to dismiss Plaintiffs' private nuisance, public nuisance, and trespass claims for failure to state a claim. (Doc. 47.) On October 6, 2023, Plaintiffs opposed the motion to dismiss, and Defendants replied on November 3, 2023.

On November 3, 2023, the State filed a motion for leave to file an amicus brief and attached a proposed amicus brief. (Doc. 57.) Both Plaintiffs and Defendants opposed the State's motion on December 1, 2023, and the State filed its reply on December 13, 2023. Thereafter, Plaintiffs moved to strike the State's reply or, in the alternative, for leave to file a surreply. On January 17, 2024, the court denied Plaintiffs' motion to strike and granted the request to file a surreply. The court held oral argument on February 27, 2024 and took the pending motions under advisement.

## II.    Conclusions of Law and Analysis.

The State seeks to file an amicus brief wherein it requests a stay under the *Colorado River* doctrine or pursuant to the court's inherent authority, contending the

3

motion before the court and "(2) the reason why an amicus memorandum is desirable and why matters asserted are relevant to the disposition" of the case or motion before the court. *Id.* at *3; *see also* Fed. R. App. P. 29(a)(2), (3). The parties do not consent to the State's amicus brief nor do they agree that it would assist the court as it is unrelated to Defendants' pending motion to dismiss.

      The court agrees with Plaintiffs and Defendants that the State's amicus brief does not seek to address the pending motion but rather seeks to effectively terminate this case. For purposes of abstention under the *Colorado River* doctrine, there is no distinction between a stay and dismissal. *See Shields v. Murdoch*, 891 F. Supp. 2d 567, 576 n.1 (S.D.N.Y. 2012) ("Although Defendants have requested a stay, and not abstention, the Second Circuit has 'rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the [*Colorado River*] exceptional circumstances test.'") (brackets in original) (quoting *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 n.1 (2d Cir. 1986)). The court nonetheless agrees the State has a legitimate interest in this case in light of the overlapping State Case. The State asserts that some courts have granted amicus curiae "enhanced" or "elevated" status whereby they have accorded a non-party the same rights as parties without intervention. (Doc. 67 at 7.) The district court cases the State cites in which this has occurred are few.[2] Against this backdrop, the court is reluctant to allow a non-party "elevated" rights especially when the Second Circuit has held this practice is unauthorized. *See MasterCard Int'l Inc.*, 471 F.3d at 382.

---

[2] Although one district court has permitted a non-party Indian tribe to file an amicus brief seeking dismissal pursuant to Fed. R. Civ. P. 19, even there the court concluded limited intervention was available. *See Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, 471 F. Supp. 2d 295, 312 (W.D.N.Y. 2007), *amended on reconsideration in part*, 2007 WL 1200473 (W.D.N.Y. Apr. 20, 2007) (permitting non-party Indian tribe asserting sovereign immunity to file amicus brief "seeking Rule 19 dismissal[]" although non-party tribe "could have moved to intervene" on limited basis); *Warren v. United States*, 2009 WL 1663991, at *3 (W.D.N.Y. June 15, 2009) (declining to require non-party Indian tribe "seeking *amicus curiae* status to argue sovereign immunity[]" to intervene because intervention "would simply elevate form over substance[]").

Although the State requests relief that is generally reserved for parties, it argues it cannot intervene in this action without destroying diversity jurisdiction.[3] Notwithstanding this concern, the cases the State cites do not involve limited and permissive intervention on a single issue, nor do they address intervention by a person or entity that is not joined as a party under Fed. R. Civ. P. 19 or 20.[4]

The State further contends that were it to intervene on the issue of abstention, this court would be required to dismiss this entire case for lack of subject matter jurisdiction. Some courts have rejected this conclusion. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 224, 226 (D. Md. 2010) (discussing competing views and concluding "New Hampshire [Insurance Company] is not an indispensable party such that its intervention under Rule 24 would destroy this court's diversity jurisdiction" and concluding that permissive intervention was appropriate because "[a]lthough New Hampshire and the Perlberg defendants seek the identical result in . . . action, their interests are not identical[.] . . . It would be desirable, therefore, to have all parties heard at this stage").

The parties to this action have urged the State to seek intervention so that they may address the State's right to intervention and abstention arguments. They have thus

---

[3] The State claims that, as a non-citizen, its intervention will destroy diversity of citizenship. *See Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) ("[A] State is not a 'citizen' for purposes of the diversity jurisdiction."); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014) ("[I]n cases involving a State or state official, we have inquired into the real party in interest because a State's presence as a party will destroy complete diversity.") (citing *Mo., Kan. & Tex. Ry. Co. v. Mo. R.R. & Warehouse Comm'rs*, 183 U.S. 53, 58-59 (1901)).

[4] The cases the State relies upon are cases in which the intervenor was joined as a party. The State does not ask to be joined as a party under Fed. R. Civ. P. 19 or 20. *See, e.g., Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 178 (2d Cir. 2007) (dismissing party joined pursuant to Fed. R. Civ. P. 19(a) as a necessary party because it "destroyed complete diversity[]"); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 119 (2d Cir. 2014) (holding "federal subject matter jurisdiction under Section 1332(a)(3) requires complete diversity of all parties, regardless of how they joined the action[]" and affirming dismissal of party that permissively joined pursuant to Fed. R. Civ. P. 20 because it "was an arm of the state of Pennsylvania[]" and would have destroyed complete diversity).

arguably waived any argument that limited, permissive intervention on a single issue will require dismissal of their case.

Because an amicus brief is an improper mechanism for the State to pursue a request for a stay or dismissal of a case in which it is not a necessary party, it must choose another mechanism to present its views to the court.

## CONCLUSION

For the reasons stated above, the court DENIES the State's motion for leave to file an amicus brief. (Doc. 57.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of March, 2024.

Christina Reiss, District Judge
United States District Court