UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 SEP -6  PM 2: 31

CLERK

BY _____
DEPUTY CLERK

ADDISON CENTRAL SCHOOL DISTRICT, )
*et al.*, )
)
        Plaintiffs, )
)
    v. )        Case No. 2:23-cv-00164
)
MONSANTO CO.; SOLUTIA, INC.; and )
PHARMACIA LLC, )
)
        Defendants. )

## OPINION AND ORDER DENYING
## THE STATE OF VERMONT'S MOTION TO STAY
(Doc. 99)

Plaintiffs, a group of ninety-three school districts and one independent school in

Vermont, bring this case against Defendants Monsanto Co.; Solutia, Inc.; and Pharmacia

LLC (collectively, "Defendants"), arising out of the manufacture and sale of products

containing polychlorinated biphenyls ("PCBs") used in the construction of Plaintiffs'

school buildings prior to 1980. On May 17, 2024, intervenor the State of Vermont (the

"State") moved to stay this case pending the outcome of a parallel litigation in state court.

(Doc. 99.) On June 17, 2024, Plaintiffs opposed the State's motion, (Doc. 104), and the

State replied on July 17, 2024, (Doc. 108), at which time the court took the motion to stay

under advisement.[1]

Plaintiffs are represented by Gregory J. Pals, Esq.; J. Grant LaBar, Esq.; Pietro J.

Lynn, Esq.; R. Prescott Sifton, Jr., Esq.; T. Roe Frazer, II, Esq.; Thomas Roe Frazer, III,

Esq.; and William W. Blair, Esq. Defendants are represented by Alexandrea L. Nelson,

Esq.; Devin T. McKnight, Esq.; Douglas J. Moore, Esq.; Emyr T. Remy, Esq.; Hannah C.

Waite, Esq.; Ian P. Carleton, Esq.; Quentin F. Urquhart, Jr., Esq.; and Stephen I. Hansen,

---

[1] Defendants did not join in or oppose the State's motion to stay.

Esq. The State is represented by Assistant Attorneys General Justin E. Kolber and David
G. Golubock; Gregory J. Pals, Esq.; J. Grant LaBar, Esq.; Matthew F. Pawa, Esq.; T. Roe
Frazer, II, Esq.; Thomas Roe Frazer, III, Esq.; and Wesley Kelman, Esq.

I.      **Factual Background and Procedural History.**

On December 9, 2022, Burlington School District filed a complaint against
Defendants in the District of Vermont seeking recovery for PCB contamination in
Burlington High School (the "BHS Case"). *See Burlington Sch. Dist. v. Monsanto Co.*,
No. 2:22-cv-215-WKS (D. Vt.).[2] The BHS Case is in the discovery phase and set to be
trial ready by August 1, 2025. *See id.* at Doc. 98.

On June 16, 2023, the State filed a complaint against Defendants in Chittenden
County Superior Court seeking recovery for PCB contamination in, among other things,
Vermont's public and independent schools (the "State Case").[3] *See State v. Monsanto
Co.*, Case No. 23-CV-02606 (Vt. Super. Ct., Chittenden Unit).[4] In the State Case, the
State alleges Defendants are the successors in liability of Monsanto Company ("Old
Monsanto") which manufactured, marketed, sold, and distributed PCBs from 1929 to
1977. According to the State, Old Monsanto was responsible for manufacturing over 99%
of PCBs in the United States and there are no known natural sources of PCBs. The
complaint asserts PCBs are toxic and have contaminated natural resources and schools in
Vermont at levels highly dangerous to human health, and particularly damaging to
children and adolescents. In schools, the State claims PCBs in construction materials

---

[2] The court takes judicial notice of the docket in *Burlington Sch. Dist. v. Monsanto Co.*, No.
2:22-cv-215-WKS (D. Vt.). *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that
is not subject to reasonable dispute because it: (1) is generally known within the trial court's
territorial jurisdiction; or (2) can be accurately and readily determined from sources whose
accuracy cannot reasonably be questioned.").

[3] The State subsequently amended its complaint in the State Case in October 2023.

[4] The court takes judicial notice of the Vermont Superior Court docket in *State v. Monsanto Co.*,
23-CV-02606 (Vt. Super. Ct., Chittenden Unit). *See* Fed. R. Evid. 201(b) ("The court may
judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known
within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined
from sources whose accuracy cannot reasonably be questioned.").

migrated from their original applications, eventually and indefinitely contaminating indoor air. Old Monsanto allegedly knew its PCBs were toxic and would eventually contaminate the air at levels dangerous to human health and nonetheless marketed its PCBs for use in construction.

In 2021, the Vermont Legislature allocated five million dollars for PCB indoor air testing in schools built or renovated before 1980. *See* 2021 Vt. Acts & Resolves 74, § E.709.1(a) (authorizing use of $4.5 million from Environmental Contingency Fund); *id.* § B.1106(a)(3) (appropriating $500,000). Testing began in spring of 2022 and is scheduled for completion by 2027. The State promulgated school action levels ("SALs") based on the quantity of PCBs detected in indoor air to indicate when schools need to identify and abate potential sources of PCBs inside their buildings. Various schools allegedly have PCB levels in "exceedance" of SALs and PCB contamination may be found in schools that have not yet been tested. (Doc. 57-1 at 10.) The State claims it has spent millions of dollars on testing and will have to spend millions more to remediate the contamination in Vermont's schools, disrupting Vermont children's educations in the process.

In the State Case, the State asserts nine causes of action: public nuisance (Count I); private nuisance (Count II); strict liability for defective design (Count III); strict liability for failure to warn (Count IV); trespass (Count V); negligence (Count VI); unreasonable harm to groundwater pursuant to 10 V.S.A. § 1410 (Count VII); strict liability for hazardous materials pursuant to 10 V.S.A. § 6615(a)(5) (Count VIII); and cost recovery pursuant to 2023 Vt. Acts & Resolves 78, § C.112(d) ("Act 78") (Count IX). It seeks compensatory damages for the costs of testing, monitoring, and remediating PCBs in natural resources, as trustee of all Vermont natural resources, and in schools, in its *parens patriae* capacity. It seeks punitive damages as well. On May 29, 2024, the Chittenden County Superior Court denied Defendants' motion to dismiss. *See* Doc. 108-2; *State v. Monsanto Co.*, 2024 WL 2818695 (Vt. Super. May 29, 2024). Defendants filed their answer on June 12, 2024. On August 28, 2024, the Vermont Superior Court extended the time for the parties in the State Case to file a proposed stipulated discovery

3

and pre-trial order until October 1, 2024. *See State v. Monsanto Co.*, Case No. 23-CV-02606 (Vt. Super. Ct., Chittenden Unit).

Plaintiffs filed the Complaint against Defendants in this case on June 29, 2023, to recover past, present, and future costs, losses, and damages associated with the presence of PCBs in their properties. The allegations in their Complaint are substantially similar to those in the State Case, and the plaintiffs in each case assert the same common law claims for public nuisance, private nuisance, strict liability for defective design, strict liability for failure to warn, trespass, and negligence.[5]

On August 23, 2023, Defendants moved to dismiss several Plaintiffs from the Complaint for lack of standing and moved to dismiss Plaintiffs' private nuisance, public nuisance, and trespass claims for failure to state a claim. (Doc. 47.) On October 6, 2023, Plaintiffs opposed the motion to dismiss, (Doc. 53), and Defendants replied on November 3, 2023. (Doc. 58.)

On November 3, 2023, the State filed a motion for leave to file an amicus brief and attached a proposed amicus brief, seeking a stay of this action pending resolution of the State Case. (Doc. 57.) Both Plaintiffs and Defendants opposed the State's motion on December 1, 2023, (Docs. 65, 66), and the State filed its reply on December 13, 2023. (Doc. 67.) Thereafter, Plaintiffs moved to strike the State's reply or, in the alternative, for leave to file a surreply. (Doc. 69.) On January 17, 2024, the court denied Plaintiffs' motion to strike and granted the request to file a surreply. (Doc. 72.) The court held oral argument on February 27, 2024.

The court denied the State's motion for leave to file an amicus brief on March 8, 2024, concluding that an amicus brief was an improper mechanism for the State to pursue a request for a stay. (Doc. 89.) On March 29, 2024, the State moved to intervene for the limited purpose of seeking a stay, (Doc. 93), which Plaintiffs did not oppose. (Doc. 95.) The court granted the State's motion to intervene on April 30, 2024. (Doc. 98.)

---

[5] The Complaint was amended on August 29, 2024, to add an additional school district. (Doc. 112.)

Thereafter, the State filed the pending motion to stay. It argues that this action is duplicative of the State Case and that allowing this action to proceed will result in "a massive duplication of effort, conflicts in approach, court rulings on the same issues in different courts (with the potential for strategic gameplay), and a race to judgment." (Doc. 99-1 at 4.) The State contends that abstention under the *Colorado River* doctrine is appropriate because there is a substantial likelihood that the State Case, which covers additional claims and school districts as compared to this case, will dispose of the claims in this action. In the alternative, the State requests the court exercise its inherent authority to issue a stay in the interests of comity and judicial efficiency.

The State has submitted the declaration of Patricia Coppolino, a Senior Environmental Program Manager within the Waste Management and Prevention Division of the Vermont Agency of Natural Resources (the "ANR"), who oversees the Sites Management Section responsible for managing PCB contamination in Vermont. *See* Doc. 108-1. She asserts that the ANR and Vermont Agency of Education have expended most of the appropriated funds for PCB testing and remediation in schools but that ANR has approved coverage for all PCB investigation and remediation costs incurred by school districts "to the full extent required by Act 78[.]" *Id.* at 2. She also states that Plaintiffs' stipulation with Defendants in this action has interfered with the ANR's PCB testing and remediation efforts because the stipulation requires Plaintiffs to provide advance notice to Defendants before ANR can conduct testing. According to her, the State Case encompasses remediation for approximately two dozen school districts which are not parties to this action.

Plaintiffs counter that the State Case is not parallel to this action because they "are legally responsible for the investigation and remediation of PCB contamination on their grounds[,]" (Doc. 104 at 4), the State does not have the authority to seek "all [the] categories of damages to which [Plaintiffs] are entitled[,]" *id.* at 5, and Plaintiffs are not guaranteed to receive any money the State may recover in the State Case. They also argue that the *Colorado River* factors do not weigh in favor of abstention.

In furtherance of their opposition, Plaintiffs submit the declaration of Mark Tucker, the Superintendent of Schools for the Caledonia Central Supervisory Union which includes Cabot Town School District ("CSD"), a Plaintiff in this action. *See* Doc. 104-2. Mr. Tucker asserts that PCB testing at CSD revealed contamination above SALs but the ANR advised CSD that there were insufficient funds to pay for the estimated remediation required.

## II.   Conclusions of Law and Analysis.

### A.   Standard of Review.

Although a federal district court has discretion to abstain from exercising its federal jurisdiction, *see Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 99 (2d Cir. 2012), because abstention represents an "exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998) (citation and internal quotation marks omitted). If the facts of the case do not meet "traditional" abstention requirements, "there is little or no discretion to abstain[.]" *Id.*

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *McClellan v. Carland*, 217 U.S. 268, 282 (1910). For this reason, "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (citation omitted); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

### B.   Whether the Court Should Stay this Action Pursuant to the *Colorado River* Doctrine.

Under the *Colorado River* abstention doctrine, in "'exceptional circumstances,' a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve

judicial resources[.]" *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting *Colo. River*, 424 U.S. at 813, 817-18); *cf. Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959) (holding abstention may be granted where "the order to the parties to repair to the state court would clearly serve an important countervailing interest"). This ground for abstention is "unrelated to considerations of proper constitutional adjudication" and rests on "considerations of wise judicial administration[.]" *Colo. River*, 424 U.S. at 817 (citation, alteration, and internal quotation marks omitted). Even though "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention[,]" those circumstances, "though exceptional, do nevertheless exist." *Id.* at 818.

The *Colorado River* doctrine governs motions to stay as well as motions to dismiss because "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). To determine whether to abstain from exercising jurisdiction under *Colorado River*, the Second Circuit follows a two-pronged approach. "[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer*, 146 F.3d at 118. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (citation and internal quotation marks omitted). "[A]bsolute congruency is not necessary to support a finding of *Colorado River* parallelism," *Pabco Constr. Corp. v. Allegheny Millwork PBT*, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013), and "[p]erfect symmetry of parties and issues is not required." *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013) (citation omitted) (alteration in original). Instead, a court must focus on the "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (citation omitted).

If the proceedings are parallel, the second prong of the Second Circuit's analysis requires consideration of the *Colorado River* factors:

> (1) [W]hether the controversy involves a res over which one of the courts has assumed jurisdiction []; (2) whether the federal forum is less inconvenient than the other for the parties []; (3) whether staying or dismissing the federal action will avoid piecemeal litigation []; (4) the order in which the actions were filed, [] and whether proceedings have advanced more in one forum than in the other []; (5) whether federal law provides the rule of decision []; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights[.]

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (alterations and internal quotation marks omitted) (citing *Colo. River*, 424 U.S. at 813, 817, 818; *Moses H. Cone*, 460 U.S. at 22, 23, 25-27). "'[T]he vexatious or reactive nature of either the federal or the state litigation may [also] influence the decision whether to defer to a parallel state litigation under *Colorado River*.'" *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985) (quoting *Moses H. Cone*, 460 U.S. at 17 n.20).

In evaluating the *Colorado River* factors, the court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26 (emphasis in original). "[N]one of these factors alone is necessarily determinative, but, instead, a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citation and internal quotation marks omitted). The court's analysis must not "rest on a mechanical checklist," but reflect a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also Telesco*, 765 F.2d at 362 (noting the "exceptional circumstances test" should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand") (citation omitted).

"The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. "Where

a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citation and internal quotation marks omitted).

### 1.    Whether the State Case and this Action Are Parallel.

Although both the State Case and this action are brought against Defendants, the parties are not identical because the plaintiffs differ. Total overlap, however, is not required. *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 375 (S.D.N.Y. 2020) ("[C]ourts within this circuit have concluded that parallelism can exist even where there is some asymmetry among parties to concurrent actions.") (citations omitted).

The State represents Plaintiffs' interests, at least in part, in the State Case, because it brings claims on their behalf to obtain funds for PCB testing and remediation on their properties pursuant to its *parens patriae* authority. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982) (stating state may maintain *parens patriae* action where it is "more than a nominal party[]" and "express[es] a quasi-sovereign interest[]" such as "in the health and well-being—both physical and economic—of its residents").[6]

The claims in the State Case are also substantially similar to the claims in this action because the State and Plaintiffs seek to recover against the same defendants for the

---

[6] To the extent Plaintiffs argue that the State cannot represent them pursuant to its *parens patriae* authority under Vermont common law, it is undisputed that the Vermont Legislature has authorized the State to "recover from a manufacturer of PCBs monies expended or awarded by the State for PCB investigation, testing, assessment, remediation, or removal of PCBs in a school above [SALs]." Vt. Stat. Ann. Tit. 3, § C.112(3)(d) (West 2023) (hereinafter Act 78). The State's authority to bring an action on behalf of its municipalities in *parens patriae* is not at issue in this case. Although the *parens patriae* doctrine is at issue in the State Case, a Vermont Superior Court has preliminarily recognized that right although it concedes the issue is unsettled. *See State v. Monsanto Co.*, 2024 WL 2818695, at *8 (Vt. Super. May 29, 2024) ("*Parens patriae* might properly underlie claims made as to public schools and privately owned sites. The State certainly has a quasi-sovereign interest in the health and safety of students enrolled in schools. Additionally, the State might have a quasi-sovereign interest in ensuring that privately owned properties are free from harmful contamination, given that such sites might attract numerous public visitors or represent widespread PCB contamination throughout the state, though damages available to the State related to such sites would obviously be limited.").

same conduct affecting the same properties by pursuing the same causes of action. *See Iacovacci*, 437 F. Supp. 3d at 376 ("Courts have found parallelism where claims in concurrent state and federal proceedings contain similar factual overlap.").

Plaintiffs, however, assert there is a critical difference in the damages requested because they seek money for remediation of properties with PCB concentrations below SALs. They further contend that Act 78 mandates that they *own* the claims against Defendants[7] and they assert that the State has disavowed seeking full recovery for all of their injuries.[8] Plaintiffs' Amended Complaint alleges a need to remediate and replace their buildings and facilities based on Vermont's requirements for school buildings in which SAL exceedances are found and on the general need to protect the health of students and employees. The Amended Complaint asserts that PCB levels below SALs remain a threat to human health, particularly children's health. Although Act 78 requires the State to provide grants to school districts to cover the costs of required PCB testing and remediation, it is silent regarding reimbursement for remediation below the designated SAL threshold. *See* Act 78, § C.112(b)(1)-(2).

Notwithstanding that the State and Plaintiffs have different interpretations of what remediation is "necessary," they both seek monetary damages for required testing and remediation. Any difference in the type of relief requested and the difference in the amount of money requested does not negate the substantial similarities between the State Case and this action. *See Iacovacci*, 437 F. Supp. 3d at 377 ("[E]ven if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues."). Although Plaintiffs here pursue different legal theories than those at issue in the State Case, the State Case involves "in its essential elements the same cause of action, regardless of theory or

---

[7] Act 78 recognizes school districts as parties that can file suit in relation to PCB contamination and only requires a school district that recovers money from litigation to reimburse the State for "the amount of the grant awarded to the school district[.]" Act 78, § C.112(c).

[8] According to the State, if a school district chooses to implement remediation that is more extensive than has been approved by the ANR, the "ANR would not expect to cover the additional cost." (Doc. 108-1 at 1.)

pleadings," and "[m]erely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *Telesco*, 765 F.2d at 362. The State Case and this action are thus sufficiently parallel to weigh in favor of abstention.

### 2. The Res and Convenience of the Parties.

Although the State argues that both cases implicate real property, neither the State Case nor this action are in rem proceedings,[9] and neither court has "assumed jurisdiction over any res or property." *Niagara Mohawk Power Corp.*, 673 F.3d at 101. "[T]he absence of a res points toward exercise of federal jurisdiction." *Woodford*, 239 F.3d at 522 (alteration adopted) (internal quotation marks and citation omitted). Because both courts are located in Burlington, Vermont, the convenience factor is neutral and this also weighs against abstention.[10] *See Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) ("[W]here the federal court is just as convenient as the state court, that factor favors retention of the case in federal court.") (internal quotation marks and citation omitted).

### 3. The Concerns of Piecemeal Litigation.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day*, 862 F.2d at 659 (alteration and citation omitted). As the Supreme Court has explained:

> [S]ince a judgment by either court would ordinarily be res judicata in the other, the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first[, which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum.

---

[9] An in rem proceeding is one "to determine the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property[.]" *Action In Rem*, Black's Law Dictionary (12th ed. 2024).

[10] The State points out that any appeals from the State Case would be held in Montpelier, Vermont, while any appeals from this case would be held in New York City. The court finds this difference immaterial.

*Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567-68 (1983). "[T]he primary context in which [the Second Circuit] ha[s] affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524. However, this factor cannot be invoked to supersede all other factors.[11] As the Second Circuit explained:

> The district court called this factor "the paramount consideration in this case." Although avoidance of piecemeal litigation is indeed an important value, and although the parallel state and federal proceedings here present some risks that the district court correctly identified, the court erred in concluding that this factor outweighed the other *Colorado River* factors that militated against abstention. As we have explained, the primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties.

*Niagara Mohawk Power Corp.*, 673 F.3d at 101-02 (citations omitted).

If this action is not stayed, there is a potential for piecemeal litigation because more than one court will adjudicate Defendants' liability for the same or similar conduct affecting some of the same properties.[12] As a result, the court's "refus[al] to abstain . . . will force [D]efendants to defend this complex litigation on two fronts[,]" and

---

[11] The court agrees with Plaintiffs that *Lefrancois v. Killington/Pico Ski Resort Partners, LLC*, 2019 WL 6970944 (D. Vt. Dec. 19, 2019), is inapposite. There, piecemeal litigation was the objective for filing the federal court action which asked this court to delve into state court proceedings initiated by the plaintiff which proved unsatisfactory because of opposing counsel's alleged misconduct.

[12] *See also Bertrand v. Demmon*, 2017 WL 2303994, at *7 (N.D.N.Y. May 26, 2017) (abstaining "notwithstanding the fact that *res judicata* or collateral estoppel may ultimately cure an inconsistent outcome" where proceeding in federal court "would be a waste of judicial resources"); *Colony Ins. Co. v. Danica Grp., LLC*, 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) (abstaining because "forcing [a defendant] to litigate in two courts would be unduly burdensome to [the defendant]" and "forcing two courts to adjudicate the [insurance] [p]olicies' enforceability would be a waste of judicial resources," even though "collateral estoppel would likely prevent the courts from reaching inconsistent outcomes").

"inconsistent disposition of these claims between two concurrent forums [may] breed additional litigation on assertions of claim and issue preclusion." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) (affirming district court's abstention under *Colorado River*). These concerns are legitimate albeit unavoidable because with this action, the State Case, and the BHS Case, there are three pending lawsuits[13] to determine Defendants' liability regarding PCB contamination at various Vermont schools. Abstention in this case will only reduce the competing lawsuits by one. As Plaintiffs point out, the State apparently has no issue with the BHS case proceeding in federal court although it clearly represents the same threat of piecemeal litigation as Plaintiffs' case and for the same reasons.

The doctrines of collateral estoppel or res judicata may reduce the likelihood of inconsistent outcomes. In addition, abstention is not warranted to prevent an "unseemly and destructive race" to the courthouse because any such race has already taken place. *San Carlos Apache Tribe of Ariz.*, 463 U.S. at 567. The State filed its own lawsuit approximately six months after the BHS Case was filed in federal court. Concern regarding piecemeal litigation therefore weighs only slightly in favor of abstention because piecemeal litigation is unavoidable. Notably, Defendants, the parties most likely to be prejudiced by allegedly duplicative lawsuits, do not seek abstention or join in the State's motion for a stay.

> **4.    The Order in Which the Proceedings Were Filed and Advancement in the Fora.**

The court must consider "the order in which jurisdiction was obtained." *Niagara Mohawk Power Corp.*, 673 F.3d at 102. "This factor does not turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Welch's*, 170 F.3d at 122 (quoting *Moses H. Cone*, 460 U.S. at 21). The State Case was filed first by approximately two weeks and has progressed slightly further than this action because the Chittenden County Superior Court

---

[13] A self-represented litigant filed a fourth case which has since been dismissed. *See Mason v. Bayer AG-USA*, 2023 WL 346635 (D. Vt. Jan. 20, 2023).

has ruled on Defendants' motion to dismiss and Defendants have filed their answer, although no discovery schedule has been set. In this case, the parties have agreed to testing protocols and testing is presumably under way, however, Defendants' motion to dismiss is still pending before this court and discovery has yet to commence. In part, this delay is due to the State's decision to intervene in this case and seek a stay. On balance, as both cases are in their nascent phases, this factor is neutral.

### 5.    The Presence of Federal Issues.

Although "the absence of federal issues does not strongly advise dismissal[] unless the state law issues are novel or particularly complex[,]" *id.* at 124, "the source-of-law factor 'has more influence when a federal rule of decision is involved[.]'" *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (quoting *Giardina v. Fontana*, 733 F.2d 1047, 1053 (2d Cir. 1984)).

Each of Plaintiffs' claims arises under state law, some of which raise novel legal issues in Vermont such as whether a plaintiff may bring private nuisance, public nuisance, or trespass claims. This court has already addressed many of those issues in the BHS Case. Plaintiffs contend that federal regulations imposed on schools will "be an additional element" of their claimed damages, (Doc. 104 at 36); however, the Amended Complaint does not allege that Plaintiffs have taken or will be required to take any actions to comply with federal regulations. Because federal law will not provide the rule of the decision for Plaintiffs' claims and this action requires adjudication of state law claims, some of which are novel, this factor supports abstention.

### 6.    The Adequacy of State Court Procedures to Protect Plaintiffs' Federal Rights.

"In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Welch's*, 170 F.3d at 124 (quoting *Moses H. Cone*, 460 U.S. at 28). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal[.]" *Moses H. Cone*,

460 U.S. at 28. "This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Bethlehem Contracting Co.*, 800 F.2d at 328.

Plaintiffs bring state law claims and have identified no federal right that would be imperiled if Defendants' liability for PCB contamination in Vermont schools is decided in state court. To the extent Plaintiffs seek damages beyond those sought by the State, however, the State Case may not fully address Plaintiffs' claims and may not fully compensate their damages. If the State succeeds on its claims in state court, the issue of whether Plaintiffs are entitled to additional damages will remain unresolved. By abstaining, the court will essentially foreclose Plaintiffs' recovery of these damages.

In light of the State's decision to allow the BHS Case to proceed without requesting a stay, abstention would also place Plaintiffs at a disadvantage compared to other litigants in federal court seeking to bring PCB contamination claims. This factor therefore militates against abstention.

### 7.    Weighing the Factors.

Under *Colorado River*, the court's task "is not to determine whether there is some substantial reason for the exercise of federal jurisdiction; rather, the court must ascertain whether there exist exceptional circumstances that justify the surrender of federal court jurisdiction." *Welch's*, 170 F.3d at 124. Factors one, two, four, and six weigh against abstention. Factors three and five weigh in favor of abstention; however, the potential for piecemeal litigation remains unavoidable. Although a close call, weighing all six factors, and considering the fact that neither party to this case seeks abstention, the State has failed to establish "exceptional circumstances" warranting abstention. *Colo. River*, 424 U.S. at 813; *see also Lafont v. Phillip*, 2022 WL 2132992, at *6 (E.D.N.Y. June 14, 2022) (concluding where three factors weighed in favor of abstention and three factors weighed against it that abstention was not justified); *Iacovacci*, 437 F. Supp. 3d at 379 (stating abstention was inappropriate where first, second, and sixth factors weighed against abstention and third, fourth, and fifth factors weighed in favor of abstention).

Because the State has not met its burden of demonstrating that this action falls within the "narrow and specific limits" of the *Colorado River* doctrine, *Dittmer*, 146 F.3d

at 116 (internal quotation marks and citation omitted), the State's motion for abstention is DENIED.

## C.   Whether the Court Should Stay this Action Pursuant to its Inherent Authority.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). As a result, "[t]he decision whether to issue a stay is . . . firmly within a district court's discretion." *Delgado v. NJ Transit Rail Operations., Inc.*, 329 F.R.D. 506, 507 (S.D.N.Y. 2019) (internal quotation marks omitted). Courts in the Second Circuit consider the following factors when deciding whether to issue a stay:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Id.* at 508 (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009)). The interests of the courts include "comity" and "judicial efficiency[.]" *Van Wagner Enters., LLC v. Brown*, 367 F. Supp. 2d 530, 531 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Although some circuits have held that "the *Colorado River* factors [exclusively] control whether a stay can issue in favor of parallel state proceedings[,]" *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 843 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 554 (2024), the Second Circuit has acknowledged a federal court's inherent authority to stay in addition to *Colorado River* abstention principles. *See Giulini v. Blessing*, 654 F.2d 189, 193 (2d Cir. 1981) (concluding that *Colorado River* doctrine did not require stay but stay