# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

ADDISON CENTRAL SCHOOL
DISTRICT, *et al.*,

        Plaintiffs,

v.

MONSANTO COMPANY, *et al.*,

        Defendants.

Case No. 2:23-CV-00164-CR

## PLAINTIFF HARTFORD SCHOOL DISTRICT'S
## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO
## AMEND STIPULATION REGARDING EVIDENCE AND FOR SANCTIONS

NOW COMES Plaintiff, Hartford School District[1], and hereby responds in opposition to Defendants' Motion to Amend Stipulation Regarding Evidence and for Sanctions Due to Past Violations (ECF No. 175) and Defendants' Supplemental Memorandum (ECF No. 178), as follows:

### INTRODUCTION

As evidenced in Defendants' own Motion, it has become impractical and unworkable to implement, strictly, the terms of the Stipulation. (ECF No. 25, "the Stipulation"). Agreed to in good faith in July 2023 as a tool to assist the parties in monitoring the State of Vermont testing, the Stipulation has proven to be cumbersome, exceedingly burdensome, and impractical to implement. At all times in this case, Plaintiff school districts and Plaintiffs' counsel have acted in

---

[1] For purposes of convenience and to avoid duplication, all Plaintiff Group A Schools and Plaintiff Group B Schools join in on this Response in Opposition.

good faith – continuously (almost seven days a week) apprising counsel for Defendants of the State's PCB inspections and testing when that information becomes available to Plaintiffs, and in the swirl of busy school schedules across multiple public-school districts and schools. Plaintiffs, a group of School Districts[2] bound together in this litigation for safe school environments and lawful compensation, have acted in good faith in accommodating Defendants at every turn under the myriad circumstances of statewide school district PCB testing being done by the State of Vermont. Defendants, in their instant Motion, completely mischaracterized Plaintiffs' good faith efforts as so egregious as to warrant draconian sanctions, including significant money from cash-strapped local schools. Since entry of the Stipulation, Plaintiffs have complied with its terms in nearly every instance. Defendants now attempt to seize upon isolated and rare exceptions as a basis for imposing sweeping sanctions against all Plaintiff schools in this case.

Plaintiffs respectfully request the Court to **DENY** Defendants' Motion. Discovery should not be a matter of gamesmanship nor conducted like a game of chess; rather, the over-arching purpose of the discovery rules is to encourage the disclosure of information and materials to avoid unnecessary surprise and to level the playing field for both parties to the litigation. *See Gilead Sciences, Inc. v. Safe Chain Solutions LLC*, 345 F.R.D. 22 (E.D.N.Y. 2024) (citing *Russell v. Aid to Developmentally Disabled, Inc.*, No. 12-CV-0389 (LDH) (AKT), 2016 WL 11735374, at *5 (E.D.N.Y. Mar. 31, 2016)). The Stipulation, notwithstanding the good faith efforts of Plaintiffs, has become unworkable due to factors outside the control of the Plaintiffs.

---

[2] In this case, Plaintiffs comprise over 80 school districts in the State of Vermont. Each school district contains individual, multiple schools. Each school is the subject of a statewide initiative of uniform testing for the presence of poly-chlorinated biphenyls (PCBs), a known human carcinogen and toxic chemical manufactured by Monsanto. The EPA banned PCBs almost 50 years ago. The danger and threat of PCBs persists in school buildings built before 1980, and persists in Vermont schools even today.

## ARGUMENT

### i.    *Experience Has Proven the Current Testing Protocol is Unworkable*

Long before bellwether plaintiff selections and bellwether discovery protocol were adopted by the Court, the Stipulation was entered in July 2023. Since that time, Plaintiffs have complied with the Stipulation in good faith considering all the circumstances. Yet, the experience of the Plaintiff school districts in this case proves that the Stipulation has become overly burdensome and impractical to implement its strict terms. PCB testing in Vermont schools, until recently, was unprecedented and a complete unknown. Over the course of months of the State's testing, it has become clear that the logistical demands of the Stipulation are incompatible with the unpredictable and time-sensitive nature of school environments, the schedules of various individuals and entities, and the requirements of the State and its contractors. Plaintiffs had anticipated that Defendants would be reasonable and understanding of the demands of school schedules during the PCB testing administered by the State of Vermont.

As it relates to the four-week notice requirement in the Stipulation, counsel for Defendants repeatedly place blame on Plaintiffs even when the Defendants themselves acknowledge the contractors of which they complain are not directed or controlled by the Plaintiff school districts or Plaintiffs' counsel. (ECF No. 175, at 1-2). As Defendants stated, "[t]his work is performed by contractors that are not involved in (and were not hired for) this litigation and are being directed in their work by the State of Vermont." (ECF No. 175, at 1-2). At the same time, Defendants always have had and continue to have *direct access* to the contractors' online calendar, which Defendants admit "is supposed to include the dates for all PCB-related work to be performed by State retained contractors." (ECF No. 175, at 3).

Defendants place sole blame on the Plaintiffs, however, arguing: "Defendants should not be forced to rely on this calendar since it is typically not updated to give the full four weeks' notice of events as required by the Stipulation." *Id.* Given the undisputed fact that the contractors are not controlled by Plaintiffs, and that their calendars are equally accessible to Defendants, it is unreasonable — and at times impossible — for Plaintiffs to provide four weeks' advance notice as contemplated by the Stipulation. In most instances, Plaintiff school districts have fulfilled the Stipulation's notice requirements to the letter. Using their cherry-picked examples over many months and many different schools, Defendants attempt to seize upon a few isolated instances as the basis for obtaining sweeping sanctions against all schools, even ones not mentioned in Defendants' Motion as alleged offenders of the Stipulation.

Courts are not always bound by stipulations. *Sinicropi v. Milone*, 915 F.2d 66, 68 (2nd Cir. 1990). A court may disregard a stipulation if it would be *manifestly unjust* to enforce the stipulation. *Id.* at 68 (emphasis added). *See also Aronstam v. All-Russian Central Union of Consumers' Societies*, 270 F. 460, 464 (2nd Cir. 1920) (noting a party may be relieved from a stipulation that tends to perpetrate an injustice). Indeed, "the court has an obligation, in addition to having the right, to relieve counsel of pre-trial stipulations where such relief is necessary to prevent manifest injustice." *Central Distributors, Inc. v. M. E. T., Inc.*, 403 F.2d 943, 945 (5th Cir. 1968) (citing *Laird v. Air Carrier Engine Service*, 263 F.2d 948, 953 (5th Cir. 1959)). "A stipulation of counsel originally designed to expedite a trial should not be rigidly adhered to when it becomes apparent that it may inflict manifest injustice upon one of the subscribers thereto." *Central Distributors, Inc.*, 403 F.2d at 945 (citing *Maryland Casualty Co. v. Rickenbaker*, 146 F.2d 751 (4th Cir. 1944)).

Defendants' Motion is, in effect, an attempt to cause a manifest injustice. If enforced in the manner desired by the Defendants, the Stipulation's four-week notice requirement of State testing, especially because the Plaintiffs have had no control over the scheduling of that testing, will work a manifest injustice on the Plaintiffs. Plaintiffs have also been unreasonably subject to fast turnaround times on related voluminous productions to no reasonable end, *see e.g.*, (Ex. A); (Ex. B); (Ex. C), especially in light of the Court's bellwether discovery process that focused on only six schools. To avoid a manifest injustice, the Plaintiffs should be relieved of strict compliance with the Stipulation.

Where testing was attempted, planned, or completed, the nature of coordination among the school personnel, lawyers, experts, consultants, contractors, and others has proven to be highly dynamic, often requiring flexibility and reasonableness, rather than strict adherence to the four-week notice requirement. Real-time scheduling conflicts among multiple schools, consultants, contractors, experts, and attorneys, often make it impractical to reliably predict testing windows four weeks in advance. The four-week notice requirement, in practice, has placed a significant burden on Plaintiff school districts, whose security-minded calendars and limited contractor availability make such advance planning for intrusive activities unworkable. Although Plaintiffs' schools operate on strict calendars, school events often arise or shift on short notice. Put differently, the four-week notice requirement as originally conceived assumed a static environment and assumed State compliance. These critical assumptions have proven to be incompatible with the complexity of coordinating multiple parties' dynamic schedules. Further compounding this issue, there are individuals and entities involved who are not directly controlled by the Plaintiff school districts, which again, is *known* to Defendants. (ECF No. 175, at 1-2).

Accordingly, Plaintiff school districts must walk a fine line as they do not wish to disrupt, impede, or delay the safe education and learning of their students; *the number one priority for our Vermont schools*. *See, e.g.*, (Ex. D, p. 2). On the other hand, Plaintiffs also do not wish to delay or stall the State's PCB testing, yet that appears to be what the Defendants really want. A more flexible and reasonable notice period would minimize disruptions, allowing testing to occur with minimal impact on the students' learning experiences, and would relieve Plaintiff schools from Defendants' unreasonable threats and demands. In the end, the underlying goal is to complete the testing at the schools as quickly and efficiently as possible so our school children can be free from any toxic exposure to Defendants' cancer-causing PCB chemicals. Good faith compliance should be the measure.

Testing time windows are often narrow and must be seized quickly upon becoming available. Strict adherence to the four-week notice requirement does not allow room for flexibility. Because of the lack of flexibility, Plaintiffs have encountered multiple missed opportunities to conduct testing *or have been faced with threats of sanctions and exclusion of evidence by counsel for Defendants*. *See e.g.*, (Ex. E); (Ex. F); (Ex. G); (Ex. H). For example, there have been instances where testing teams and school facilities were available on shorter notice (*e.g.*, 7-18 days), but testing had to be postponed under the threat of a discovery violation by counsel for Defendants. The nature of school operations prove there are only limited windows when testing can be performed without disrupting students; typically after hours, during weekends, or school breaks. Further, due to unforeseen conflicts, schedules frequently change, especially when dealing with the schedules of entire school districts, teachers, staff, students, experts, consultants, attorneys, and contractors. Waiting four weeks between notice and testing often means that, by the time testing

is scheduled to occur, one or more key participants are no longer available, triggering another delay *or more importantly*, forcing Plaintiffs into an alleged violation of the Stipulation.

Throughout this case, it has been Plaintiffs' experience that when a conflict arises, instead of working with Plaintiffs to reach a reasonable solution, Defendants have threatened monetary sanctions and exclusion of evidence. Even in situations when counsel for Defendants attend a testing event, *and are in possession of the testing results*, Defendants have threatened Plaintiffs with sanctions, exclusion, and adverse inference instructions.[3] In sum, the logistical demands from Defendants' strict application and interpretation of the Stipulation are incompatible with the unpredictable and time-sensitive nature of school environments, along with the schedules of various individuals and entities.

### ii.    *Plaintiffs' Good Faith Efforts to Meet Defendants' Unreasonable Demands*

By working and communicating with Defendants to remedy any unforeseen conflicts as soon as they are known, counsel for Plaintiffs have made every effort to cater to the needs of counsel for Defendants. *See e.g.*, (Ex. I); (Ex. J); (Ex. K). However, Defendants are never satisfied, even when the conflicts are not the fault of the Plaintiff schools or counsel for Plaintiffs. *See e.g.*, (ECF No. 175, at 3) ("Defendants should not be forced to rely on this [contractor] calendar since it is typically not updated to give the full four weeks' notice of events as required by the Stipulation."); *see also* (Ex. L). There have been other instances where, counsel for Defendants demand information, documents, and scheduling related to school testing events, and, in return, counsel for Plaintiffs have made repeated good faith efforts to comply and accommodate their requests—only for Defendants to ultimately decline to attend those very testing events on which

---

[3] No matter Defendants' attendance, they are still provided with the testing results, work plans, among other relevant documents. Importantly, the *same* documents Plaintiffs have access to.

they pressed Plaintiffs. *See e.g.*, (Ex. M); (Ex. N). In other words, the lack of advance notice is often immaterial to Defendants.

After Defendants filed this Motion, Plaintiffs acted in good faith by alerting Defendants to serious errors contained in their Motion. *See* (ECF No. 178). More specifically, in their original Motion, Defendants complained of lack of notice and sought sanctions against Rumney Memorial School and Fisher School, two schools that are neither plaintiffs in this case, nor represented by counsel for Plaintiffs, nor are they even involved in this case. *See* (ECF No. 175, at 7); (ECF No. 178). Defendants sought sanctions against non-Plaintiff schools, showing Defendants had the same experience on receiving four-weeks' notice from the non-Plaintiff schools; thus, the issues with advance notice are not specific to Plaintiff schools, but are statewide.

Interestingly, even after Defendants acknowledged their "inadvertent oversight" of the inclusion of non-Plaintiff schools, Defendants have maintained that their dollar and time request for monetary sanctions was somehow not affected. *See* (Ex. O). This fact alone underscores the lack of good faith from the Defendants by refusing to deduct their time and dollars spent on working on non-Plaintiff schools.

Plaintiffs have not precluded Defendants from conducting testing, sampling, inspections, or appearing at the State PCB testing events. Plaintiffs have not precluded Defendants from gaining the results of any of State testing. The State's testing itself follows the same protocols at every testing – thus it is impossible for Defendants to show any prejudice from being absent at any testing by the State. Without traditional discovery requests, Plaintiffs have given the Defendants access to their schools, work plans, testing plans, testing results, testing samples, and all related documents. As mentioned, the Stipulation was entered long before the Court adopted its bellwether

process (ECF No. 143), and most of Defendants' complaining goes beyond the bellwether Plaintiffs. Notwithstanding the unprecedented, good faith cooperation from Plaintiffs, Defendants are attempting to use the four-week notice requirement to attack the ***testing results***. This tactic has undermined case progress and has prolonged the exposure risks to PCBs for the children and the very communities this case seeks to protect.

     iii.     ***Defendants' Tactical Request for Pre-Trial Evidentiary Rulings***

Largely relying on anecdotal and conclusory allegations, Defendants are now seeking multiple forms of harsh and rare sanctions against the Plaintiff school districts.[4] Any decision under Rule 37 of the Federal Rules of Civil Procedure should be made in light of the full record in the case. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2nd Cir. 1979). In Defendants' requested relief, Defendants assert, "as a remedy for any air testing events for which Defendants do not receive adequate notice ***in the future***, Defendants should be permitted to opt for either exclusion of the evidence (including testing results) . . . or an adverse inference as to the conditions of the testing[.]" (ECF No. 175, at 17-18). "Ultimately, 'it is always preferable for issues to be adjudicated on the merits, rather than pursuant to discovery sanctions.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 341 F.R.D. 474, 497 (S.D.N.Y. 2022) (quoting *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 330 F.R.D. 134, 139 (S.D.N.Y. Jan. 18, 2019)).

    A. *Defendants Failed to Meet their Burden Concerning Spoliation – The Test is Not the Evidence*

---

[4] Of note, Defendants made no efforts to mitigate any of their alleged damages, and sat on any rights they might have for many months.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2nd Cir. 2001) (emphasis added) ("[t]he determination of an appropriate sanction for spoliation, *if any*, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis"). "A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim." *Schulman v. Saloon Beverage, Inc.*, No. 2:13-CV-193, 2014 WL 1516326, at *4 (D. Vt. April 18, 2014) (quoting *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 783 F. Supp.2d 736, 740 (S.D.N.Y. 2011)).  Importantly, "for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence ***actually existed and was destroyed***." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010) (emphasis added); *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. 2022) (emphasis added) (explaining that "a party seeking spoliation sanctions must necessarily show that ***the evidence at issue actually existed***.").

No evidence has been destroyed by any of the Plaintiff school districts. Spoliation has nothing to do with the act or protocol of the testing itself, as the "test" is not the evidence.  Put differently, the act of "testing" is not the evidence, the "results" are.  Even if one assumes the literal event of testing should be considered tangible evidence, before the testing is accomplished, Defendants are provided with work plans and reports from contractors detailing the procedures and circumstances of the testing. After the testing is completed, Plaintiffs then provide Defendants with the results, data, and reports from the contractors. Indeed, this is the exact same evidence and information the Plaintiffs receive.

### iv.      *Defendants' Request for Monetary Sanctions Due to General Inconveniences*

In one large lump sum from ALL Plaintiffs, Defendants are demanding $24,053.15 for having to do unspecified, non-itemized, non-evidentiary work they claim that one lawyer has done in trying to enforce the unworkable terms of the Stipulation. *See* (Ex. G); (ECF No. 175, at 17). Importantly, Defendants have utterly failed to identify which Plaintiff School District cost them any dollars certain. Defendants failed to provide any detailed time records justifying their $24,053.15 demand (or any dollar thereof) by school, testing event, or time period.[5] *For each testing event complained of*, Defendants failed to produce a copy of their time records showing their work on the specific testing event, failed to produce a copy of their time entries reflecting the purported lack of notice and the subsequent extra work that they complain of – simply *ipse dixit* that one attorney spent 10% of her time on the uncategorized work.[6] In fact, Defendants did not itemize a single testing event nor submit any time records. Instead, counsel for Defendants improperly lumped together the purported individual violations into a single demand, making it impossible to sort. Exclusively *ipse dixit*, without any extrinsic proof or evidence as to each alleged violation, Defendants demand monetary sanctions for "checking in more than she should have to with opposing counsel", "reviewing work plans", and "managing hundreds of inspections at dozens of schools." (ECF No. 175, at 15); (Ex. O).

---

[5] Plaintiffs are entitled to investigate the details of the $24,053.15 attorney's fees and costs demanded by counsel for Defendants. Before monetary sanctions are awarded, if any, *as to each alleged violation*, Plaintiffs should be entitled to discover the time records of counsel for Defendants, invoices, receipts, and the identities of individuals involved. Depositions may be necessary.

[6] To give the Court clarity and the Plaintiffs any due process, Defendants' Motion should have attached the total time records of the attorney, allowed inspection of the time records, provide adequate other time records for the Court and Plaintiffs to determine if the *ipse dixit* "10% of her time" is 100% accurate, and offering affidavit proof. At that point, the Plaintiffs may need additional discovery, even a deposition or at least cross-examination at an evidentiary hearing. Plaintiffs also, after having received this minimum amount of needed information, may determine that additional evidence is necessary to meet the Defendants' as yet to be offered evidence.

This kind of request is ironic as counsel for Plaintiffs has been doing the same, with it not being uncommon that Defendants decide to not appear at a testing even with four weeks notice. This type of activity for this case occurs on the Plaintiffs' side as well. Each week, counsel for Plaintiffs produces hundreds of pages of documents to Defendants, responds to Defendants' constant demands, works on trying to accommodate scheduled State testing events, produces available work plans, and manages hundreds of inspections at dozens of schools. The complaints made by counsel for Defendants reflect nothing more than the ordinary discharge of professional duties in a complex case involving an unworkable Stipulation. Any award of monetary sanctions under these conditions and for general work on the defense of this civil action would result in a manifest injustice.

Due to Defendants' vague and scattered allegations of past violations, it is unclear for exactly what, Defendants are seeking fees. This issue is further compounded by Defendants' failure to provide timesheets, affidavits, or any evidentiary proof regarding the specific testing events at issue as they relate to counsel for Defendants' requested time. Plaintiffs' concerns over the lack of specific details and citations can be summed up by Defendants inclusion of Rumney Memorial School and Fisher School; two schools that are not represented by Plaintiffs' counsel or even involved in this case. (ECF No. 178). Yet, Defendants did not deduct a dollar for their "inadvertent" work. *See* (Ex. O); (ECF No. 178). It would seem that the Defendants' demand of $24,053.15 should have been reduced by some quantum given the Defendants' admitted error they call "inadvertence". In fact, Defendants provided no time entries, fee amounts, records, or any extrinsic evidence related to these specific non-Plaintiff schools and their alleged lack of notice and subsequent extra work that they complained of. Again, this bald statement includes

Defendants' work, time, and frustration regarding schools that are *not* plaintiffs in this case. The Plaintiffs' good faith, moreover, substantially make their actions justified due to the unique circumstances of this case, such that any award of monetary sanctions would be unjust. *See* Fed. R. Civ. P. 37(b)(2)(C). *See also Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) ("Conduct is substantially justified . . . if reasonable people could differ as to the appropriateness of the contested action.").

On a daily basis, for many months, over hundreds of emails and communications, counsel for Plaintiffs in good faith have actively communicated, worked with, and participated with counsel for Defendants in the common goal of accomplishing joint participation at the State's PCB testing. In addition, counsel for Plaintiffs have been constantly working with, organizing, and scheduling testing with all the other relevant parties such as faculty members, schools, consultants, and experts. Plaintiffs will continue to work and act reasonably and in good faith under all circumstances.

        **v.**        ***Monsanto's One-Sided Penalty Stipulation***

Perhaps to bring the State's testing, this case, or both to a grinding halt, Defendants have demanded a new stipulation with even more draconian and impossible terms. (ECF No. 175, at 4, 16-18) (ECF No. 175-3); (ECF No. 175-4). Defendants now want the inclusion of express terms for sanctions, evidence exclusion, and adverse inference jury instructions if Plaintiffs do not satisfy Defendants' impossible notice demands. (ECF No. 175-3). "Before [granting] the extreme sanction of preclusion," the court "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Shanghai Weiyi International Trade Co., Ltd. v. Focus 2000 Corp.*, No. 15-CV-3533 (CM) (BCM), 2017 WL

2840279, at *10 (S.D.N.Y. June 27, 2017) (quoting *Outley v. New York*, 837 F.2d 587, 591 (2nd Cir. 1988)); *see also Gurvey v. Cowan, Liebowitz & Lathman, P.C.*, No. 06-CV-1202 (LGS) (HBP), 2014 WL 715612, at *5 (S.D.N.Y. Feb. 25, 2014) (citing *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2nd Cir. 1988)) (noting preclusion of evidence is one of the harshest sanctions available and should only be imposed in rare situations such as circumstances involving willful or bad faith violations of court orders). "Courts are quick to note, however, that a sanction in the form of an adverse inference instruction 'is an extreme sanction and should not be imposed lightly.'" *Curcio v. Roosevelt Union Free School Dist.*, 283 F.R.D. 102, 107 (E.D.N.Y. 2012) (quoting *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008)); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) (same).

Finally, Defendants are now seeking to add $1,000 sanctions against Plaintiffs in four different sections of their proposed revised stipulation. (ECF No. 175-3). Built into their proposed stipulation are provisions that would effectively eliminate Plaintiffs from prevailing at trial in the event their arbitrary demands were not satisfied. If their extreme version were adopted, a violation of the four week notice requirement, no matter the circumstances, would result in the following sanctions: (1) exclusion of the evidence (including the State's testing results), or (2) an adverse inference as to the conditions of testing, *e.g.*, a judicially manufactured inference that the HVAC systems were not operating or were operating at substandard conditions. *Id.* (emphasis added). The overriding purpose of discovery is to promote full disclosure of all facts in a fair manner. *See generally Gilead Sciences, Inc.*, 345 F.R.D. 22 (citing *Russell*, 2016 WL 11735374, at *5). Defendants attempt to circumvent the discovery process by relying on an outdated stipulation that no longer reflects the practical realities of this case, and now urge this Court to suppress evidence

14

and sanction the Plaintiff School Districts for not complying with their unreasonable demands—an outcome that would undermine both fairness and judicial efficiency.

Finally, out of all the Plaintiff school districts (over 80 school districts), Defendants have charged only a minor subset of *schools* with individual violations. Although Defendants are complaining of individual violations pertaining to specific individual schools, Defendants did not partition out the necessary information and evidence for each alleged violation. In other words, *as to each testing event complained of*, Defendants failed to produce a copy of their time records reflecting their work on the specific testing event, did not produce a copy of their time entries showing the alleged lack of notice, and did not partition out the alleged subsequent extra work that they complain of.

## CONCLUSION

Plaintiff Hartford School District respectfully requests the Court to **DENY** Defendants' Motion to Amend Stipulation Regarding Evidence and for Sanctions Due to Past Violations. Plaintiffs further request, that in the interests of justice, the Court should amend the Stipulation's four-week notice phraseology and substitute "reasonable time."

Dated: May 8, 2025                              Respectfully Submitted,

                                                */s/ T. Roe Frazer II*
                                                **FRAZER PLC**
                                                T. Roe Frazer II *(Pro Hac Vice)*
                                                Thomas Roe Frazer III *(Pro Hac Vice)*
                                                James Grant LaBar *(Pro Hac Vice)*
                                                John Michael Allen *(Pro Hac Vice)*
                                                30 Burton Hills Blvd., Suite 450
                                                Nashville, TN 37215
                                                (615)647-6464 – Telephone
                                                roe@frazer.law
                                                trey@frazer.law
                                                grant@frazer.law
                                                mac@frazer.law

                                                **LYNN, LYNN, BLACKMAN &
                                                TOOHEY, P.C.**
                                                Pietro J. Lynn, *Esq.*
                                                76 St. Paul Street, Suite 400
                                                Burlington, VT 05401
                                                (802)860-1500 – Telephone
                                                plynn@lynnlawvt.com

                                                **ONDERLAW, LLC**
                                                William W. Blair *(Pro Hac Vice)*
                                                Gregory J. Pals *(Pro Hac Vice)*
                                                110 East Lockwood
                                                St. Louis, Mo 63119
                                                (314)963-9000 – Telephone
                                                blair@onderlaw.com
                                                pals@onderlaw.com

                                                ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 8, 2025 the forgoing was filed electronically via ECF/CM system with the Clerk of the Court for purposes of a Notice of Electronic Filing upon all counsel of record via electronic mail.

/s/T. Roe Frazer II_____